[File No. 6856.]

## THE STATE OF NORTH DAKOTA, Appellant, v. OSCAR E. ERICKSON, Respondent.

(7 NW(2d) 865.)

Opinion filed February 2, 1943.

*Clyde Duffy,* for appellant.

W. J. *Austin,* for respondent.

BURKE, J. In the complaint in this action the state of North Dakota demanded an accounting by the defendant Erickson of certain funds which it was alleged were received by him as insurance commissioner of the state of North Dakota, and disbursed or retained by him or his agents contrary to law. The defendant demurred to the complaint. In the district court the demurrer was sustained and judgment was entered for the dismissal of the action. This appeal is from the order sustaining the demurrer and from the judgment.

It was alleged in the complaint that the action was brought by direction of the governor pursuant to the provisions of chapter 265, Laws of ND 1941. The complaint was signed by Clyde Duffy as attorney for the plaintiff. It does not bear the signature of the attorney general nor in any way indicate that Mr. Duffy appeared for the state pursuant to any authority from the attorney general. By this demurrer, defendant sought to challenge the authority of Mr. Duffy to represent the state.

As was stated in plaintiff's brief, "The sole question at issue is whether this action may be prosecuted by anyone other than the attorney general." The brief continues, "There may well be a ques-

tion as to whether that issue could be raised by demurrer but we waive that question as it is important to have the primary issue determined." No objection was made to the propriety of the remedy in district court. The objection was expressly waived in this court. And since no question of jurisdiction is involved, we do not consider it necessary or proper for us to pass upon the correctness of the adopted procedure.

Upon the merits the first question with which we are confronted is one of statutory construction. The statutes involved are chapter 265, Laws of N. D. 1941 and § 157, Compiled Laws of N. D. 1913. The title and pertinent sections of chapter 265, supra, are as follows:

"An Act Providing for special audits and investigations of the North Dakota Mill and Elevator Association, the Bank of North Dakota, the State Highway Department and the Office of State Highway Commissioner, the Board of Administration, the Board of University and School Lands, the Industrial Commission and the State Securities Commission, and such other offices, departments, institutions and commissions of the State as the Governor shall designate; providing for the appointment of a Special Examining Commissioner and for the prosecution of any action or proceeding which may be deemed warranted as a result of such audit investigation or check up; providing for an appropriation to carry out the purposes of this Act."

Section 2:

"In order to carry out the foregoing objects and purposes, the Governor is hereby given and granted the following specific power and authority, viz.:

"(A) To appoint a citizen of the State of North Dakota to carry out special audits and investigations as the Governor shall direct, which appointee shall be officially known and designated as the Special Examining Commissioner and to fix the compensation of such commissioner and to remove him at pleasure and appoint another commissioner in his place.

"(B) To authorize and empower said commissioner to employ and to discharge and replace such assistants, employees, auditors, accountants, attorneys and investigators and other persons as the Governor

may deem advisable and necessary and; with the consent and approval of the Governor, to fix their compensation.

"(C)    .    .    .    .    .    .    .    .    .    .

"(D)   To direct, authorize and empower said commissioner in the name of the State of North Dakota to commence, prosecute and carry on such actions, suits or proceedings as the Governor may deem justified and advisable by reason of or growing out of any disclosures which may result from proceedings under the Act."

Paragraphs 1, 2 and 3 of § 157, supra, provide as follows:

"The duties of the attorney-general shall be:

"1.   To appear for and represent the state before the supreme court in all cases in which the state is interested as a party."

"2..  To institute and prosecute all actions and proceedings in favor of or for the use of the state, which may be necessary in the execution of the duties of any state officer."

"3.   To appear and defend all actions and proceedings against any state officer in his official capacity in any of the courts of this state or of the United States."

Defendant contended in the district court and now contends upon this appeal that chapter 265, supra, when construed with § 157, supra, requires that in all actions, brought pursuant to its terms the state must be represented by the attorney general.   He urges two well recognized rules of statutory construction which he says will, if applied, necessarily lead us to the construction for which he contends.   The first is, that statutes relating to the same subject matter must be consrued together and harmonized so as to give effect to each if it is reasonably possible so to do.   The second is, that where a statute is subject to two constructions, one of which is of doubtful constitutionality and the other of which is clearly constitutional, the latter construction will be adopted.   He asserts that the construction he advocates is reasonable and gives effect to the provisions of both chapter 265 and § 157, supra, and also that if chapter 265, supra, be construed to deprive the attorney general of the right to represent the state in actions brought pursuant to its provisions it would be of doubtful constitutionality.

The parties agree that prior to the enactment of chapter 265, supra, the exclusive right to represent the state in all actions brought in its name was vested in the attorney general; and with this construction we are in complete accord. The question then, is; did the legislature in enacting chapter 265 intend to amend or modify § 157, supra, by requiring the attorney general to share that hitherto exclusive right with a private attorney designated by the examining commissioner?

For the answer to this question we must first look to the language of the statute itself. Marks v. Mandan, 70 ND 434, 296 NW 34. The title of the act, heretofore set forth, clearly indicates that one of its purposes was to provide for the prosecution of causes of action that might be disclosed as a result of audits or investigations made pursuant to its authority; but the title contains no intimation whatever, that the lawmakers intended to provide that in such actions the state might be represented by a private attorney and thus strip from the attorney general a portion of the authority conferred upon him by statute, if not by the Constitution.

In support of the contention that chapter 265 provides for representation of the state by private attorneys, appellant relies chiefly on the provisions of subsections B and D of § 2 of the Act. Subsection D authorizes the governor to direct the examining commissioner to commence such actions as the governor may deem justified by any disclosures resulting from any investigation made under the act. Subsection B authorizes the examining commissioner to employ and discharge auditors, accountants, attorneys and investigators. Neither section expressly provides that the attorney general shall be displaced as the representative of the state in litigated actions. It is evident that the legislature did not contemplate that the examining commissioner should represent the state in such actions as there is no requirement that he be an attorney and the present examining commissioner is not an attorney. Nor does it follow as a necessary implication of subsection B that the attorneys appointed by its authority were to have the right to represent the state in the courts. There are many necessary duties of a preliminary nature which these attorneys may perform without infringing on the powers of the attorney general. The nature of these duties and the necessity for the commissioner to employ at-

torneys to perform them are disclosed by the provisions of subsection E of § 2 of chapter 265. This section authorizes the commissioner in connection with his general powers of conducting audits and investigations "to hold hearings and take testimony" of witnesses who have been subpoened to testify before him. A legislative authorization to employ an attorney for the sole purpose of assisting in the investigations, of examining witnesses at the hearings presided over by the commissioner and of advising the commissioner upon the effect, the competency and the sufficiency of the evidence adduced, is in complete harmony with legislative practice in conducting legislative investigations. We think therefore that a construction thus limiting the powers of the authorized attorneys is a reasonable construction. State v. Gattavara, 182 Wash 325, 47 P (2d) 18.

It is our duty to construe chapter 265, so as to avoid conflict with other statutes and constitutional doubt if it is reasonably possible so to do. State ex rel. Kettle River Quarries Co. v. Duis, 17 ND 319, 116 NW 751; Wood v. Byrne, 60 ND 1, 232 NW 303; Royal v. Aubol, 69 ND 419, 287 NW 603. In our discussion so far we have already referred to the conflict that would exist between § 157 and chapter 265, supra, if we were to say that chapter 265 authorized private attorneys to represent the state in suits brought in its name. That there would be such conflict is patent and it is conceded. Further, although it is not conceded, we are of the opinion that such a construction would give rise to substantial doubt as to the constitutionality of chapter 265, under the constitutional theory adopted by this court in Ex parte Corliss, 16 ND 470, 114 NW 962. In that case this court in referring to the governor, attorney general and the courts said: "It seems too obvious for discussion that the framers of the Constitution, in providing for the election of these officers by the people, thereby reserved unto themselves the right to have the inherent functions theretofore pertaining to said offices discharged only by persons elected as therein provided." The clear implication of this language is that the legislature has no constitutional power to abridge the inherent powers of the attorney general despite the fact that the Constitution provides that "the duties of the attorney general shall be as prescribed by law." Const. § 83. Our recognition that the con-

struction of chapter 265, as contended for by appellant, would give rise to a serious constitutional question is not to be interpreted as a holding that the statute would be unconstituional if so construed nor that we would necessarily adhere to the theory of Ex parte Corliss were the question presented there to be re-examined. It is sufficient for the purpose of the rule merely that the existence of the doubt be recognized. It would not be proper for us to resolve the doubt.

Following the rules of statutory construction above set forth, we hold that chapter 265, supra, does not empower the governor and the examining commissioner to authorize an attorney other than the attorney general to represent the state in actions brought thereunder.

The order and judgment of the district court are therefore affirmed.

CHRISTIANSON and NUESSLE, JJ., concur.

MORRIS, Ch. J. Concurring specially. I am unable to agree with all that is said in the majority opinion and therefore set forth my views separately. I have no doubt as to the power of the legislature to prescribe the duties of the attorney general or to authorize special attorneys to conduct litigation for or on behalf of the state.

The attorney general is a constitutional officer only in so far as the establishment of the office is concerned. The powers and duties appertaining to the office are such as the legislature may prescribe. The Constitution does not undertake in any manner to define or limit those powers and duties. Section 83 of the Constitution merely says, "The powers and duties of the . . . Attorney General . . . shall be as prescribed by law." Notwithstanding what may have been said in Ex parte Corliss, 16 ND 470, 114 NW 962, it seems clear that the Constitution, without reservation, vests in the legislature the power to prescribe by legislation the powers and duties of the attorney general. Authority that the legislature may at one time prescribe, it may later take away and vest elsewhere. I have no doubt but that the legislature by express restriction may curtail powers normally exercised by the attorney general by vesting such powers as it may see fit in other officials or such attorneys as it may specifically authorize to act. See 7 CJS 1229; State v. Gattavara, 182 Wash 325, 47 P (2d)

424

18; Follmer v. State, 94 Neb 217, 142 NW 908, Ann Cas 1914D 151.

Section 1 of chapter 265, ND Session Laws 1941, provides that: "The Governor is hereby authorized, directed and empowered without compensation, to make a special audit, investgation and check up of any or all of the following, viz.; The North Dakota Mill and Elevator Association, the Bank of North Dakota, The State Highway Department and the Office of State Highway Commissioner, the Board of Administration, the Board of University and School Lands, The Industrial Commission and The State Securities Commission, and such other offices, departments, institutions and commissions of the State as the Governor shall designate."

Section 2 of this act vests in the governor certain power and authority for the purpose of carrying out the things that the governor is authorized and directed to do by § 1. Among these authorizations is the appointment of a special examining commissioner. The governor is given the further power to "authorize and empower said commissioner to employ and to discharge and replace such assistants, employees, auditors, accountants, attorneys and investigators and other persons as the governor may deem advisable and necessary and, with the consent and approval of the governor, to fix their compensation." The governor is also given authority "to direct, authorize and empower said commissioner in the name of the state of North Dakota to commence, prosecute and carry on such actions, suits or proceedings as the governor may deem justified and advisable by reason of or growing out of any disclosures which may result from proceedings under the Act."

The governor may also direct the commissioner to hold hearings and take testimony. The commissioner when authorized by the governor may subpoena witnesses to appear before him and may call upon various officers and boards to furnish information with respect to transactions which the commissioner is authorized to investigate. Certain other authority incidental to carrying out the purposes of the act is vested in the governor the details of which are unimportant for the purposes of determining the controversy before us.

At the time of the enactment of chapter 265, Session Laws 1941, the attorney general was authorized "to institute and prosecute all

actions and proceedings in favor of or for the use of the state, which may be necessary in the execution of the duties of any state officer." Supp. to Comp. Laws, § 157. Were it not for the provision of chapter 265 authorizing the employment of attorneys there could be no question but that it would be the duty of the attorney general to represent the state in an action such as the one now before us. I agree with the majority that if possible the statutes should be harmonized. Furthermore, the attorney general should not be deprived of the customary and long-standing powers conferred upon him by the legislature unless the intention of the legislature to do so clearly appears. Chapter 265 does not clearly express such an intention. It is ambiguous on this point and subject to a construction that will not result in conflict with previous legislative enactments.

Chapter 265 authorizes the employment of attorneys and others whom the governor may deem necessary for the conduct of the audits and investigations contemplated by that act. The litigation which may result from such investigations and audits carries those matters into the realm of the powers and duties of the Attorney General under § 157, Supp. to Comp. Laws. When and if the special examining commissioner is directed or authorized by the governor to prosecute an action or proceeding in the name of the state upon matters growing out of audits and investigations authorized by the act it becomes the duty of the attorney general to prosecute and conduct such action as the chief law officer of the state. The statute under consideration does not authorize an attorney appointed by the commissioner to supplant the attorney general in the performance of this duty. I therefore concur in the statements of the law contained in the syllabus and the result arrived at by the majority opinion.

BURR, J. (dissenting). I cannot agree with the majority opinion. The decision is based upon four general propositions: that this chapter 265 must be construed in the light of § 157 of the Compiled Laws, prescribing the duties of the attorney general; that the statutes must be construed together and must be harmonized, if possible; that to uphold the maintenance of this case would render chapter 265 of doubtful constitutionality because of the decision in Ex parte Corliss, 16

ND 470, 114 NW 962; and that the questions involved may be determined upon demurrer, and we agree with the first two.

Section 157 of the Compiled Laws is the action of the legislature in prescribing the duties of the attorney general under the mandate of the people, set forth in § 83 of the Constitution. The Constitution nowhere prescribes these powers and duties. Section 83 of the Constitution provides that these powers and duties should be prescribed by law and so the legislature, by law created, defined and prescribed the powers of the attorney general.

The legislature may amend a statute, without referring to it, and while we must attempt to harmonize the original, and the amending statute, particularly where the original statute is not mentioned in the amending statute (and chapter 265 makes no reference to § 157) yet if this chapter 265 limits the powers granted to the attorney general by § 157 of the Compiled Laws, or in any way changes them or requires some of them to be shared with another officer, then it is an amendment. Thus, we get back to the question whether the legislature, having already prescribed the powers of the attorney general, may later provide that some of them be shared with another official and may ignore the historic position of an attorney general.

The import of the majority opinion is that the issues involved may be raised by demurrer to the complaint and that any other construction than that given in the opinion might render the law of doubtful constitutionality because of the holding in Ex parte Corliss.

The grounds of demurrer are:

I.

"That the court has no jurisdiction of the person of the defendant or the subject of the action."

II.

"That the Plaintiff has not legal capacity to sue.

III.

"That the complaint does not state facts sufficient to constitute a cause of action.

## IV.

"That there is a defect of parties plaintiff."

There is no merit therein. The district court has jurisdiction of the defendant, and the subject of the action. The plaintiff is the state of North Dakota, and has legal capacity to sue. The defendant makes no attempt whatever to show wherein the complaint does not state facts sufficient to constitute a cause of action. Neither is there any defect of parties plaintiff shown. The defendant does not claim that any other party should be named.

The only argument made by the defendant on the demurrer is the constitutionality of chapter 265 of the Laws of 1941. This attack upon the statute involved is based mainly upon the right of Mr. Duffy to sign the complaint as attorney for the plaintiff. The opinion of the majority is devoted entirely to this issue. The right of commissioner Klaudt to commence this action in the name of the state, is not attacked. Nor does the opinion question the power of the commissioner to employ counsel; the power of the governor to appoint the commissioner; the power of the governor to grant immunity, or the power of the governor to go beyond the territorial limits of the State to enforce the attendance of witnesses—questions attempted to be raised by the demurrer.

The complaint does not state who appointed Mr. Duffy, or that the attorney general objected. Our statute, § 797, Compiled Laws, provides how the authority of the attorney to represent his alleged client can be questioned and proof of authority may be secured. If the adverse party makes a showing to the court on reasonable grounds, and moves that the attorney be required to show authority to act for the plaintiff, the court may grant such motion. The question is not reached by demurrer.

In United States v. Throckmorton, 98 US 61, 25 L ed 93, an action was brought in the name of the United States, by the United States Attorney for the district of California. It was not brought by the attorney general. The opinion indicates clearly, that there was no congressional authorization of any district attorney to bring an action in the name of the United States, and the United States court says, "We are of opinion that, unless by virtue of an act of Congress, no one

but the attorney general, or someone authorized to use his name, can bring a suit to set aside a patent issued by the United States, or a judgment rendered in its courts on which such a patent is founded." (The issue arose over an issuance of a patent.) The plain import of this is; that if there had been an act of Congress authorizing someone else to bring such an action, it would be legal. In the case at bar, we have an act of the legislature authorizing the bringing of this suit by someone other than the attorney general.

In State v. Gattavara, 182 Wash 325, 47 P (2d) 18, an "action was instituted in the name of the state of Washington for and on behalf of the state department of labor and industries. . . ." There the objection that the action "was not brought by the Attorney General or by someone authorized by law to bring or maintain the action" was not raised by demurrer. It was raised by motion "to quash the summons," based upon the ground that it was not brought "by anyone authorized by law" to bring the action. Washington court in State ex rel. Medical Examiners v. Clausen, 84 Wash 279, 146 P 630, 632, had occasion to comment on difference between suits brought on behalf of the state, where there was no statutory provision authorizing appearance by private counsel, and suits brought under statutes authorizing such procedure, and states: "On the Attorney General in certain instances, and on the prosecuting attorneys of the several counties of the state in others, is imposed the duty of prosecuting offenders against the laws. The rights and powers of these officers in this respect are absolute in all cases *where the statute has not specially granted the power to another;* and, as we find no special grant of power to the medical board to employ special counsel to prosecute offenders against the act in question, we are forced to the conclusion that no such power exists."

In the case at bar the attack is not made by a motion to quash, nor a demand for proof of authority; nor is it claimed there is no law authorizing anyone other than the attorney general to bring the action. It is practically admitted by the defendant here that there is a law permitting this action to be brought as done, but the contention is that such law is unconstitutional.

All legislative enactments are presumed to be constitutional. State

ex rel. Haggert v. Nichols, 66 ND 355, 360, 265 NW 859. "Every reasonable presumption is in favor of the constitutionality. . . . This presumption is conclusive unless it is clearly shown that the enactment is prohibited by the Constitution of the state or of the United States." State ex rel. Linde v. Taylor, 33 ND 76, 85, 156 NW 561, LRA 1918B 156, Ann Cas 1918A 583.

Before a court has a right to construe such enactment on the theory that any other construction would render it of doubtful constitutionality, it must be a construction which does not do violence to the fair meaning of the language and there must be two or more such constructions possible, before you can make a choice. In that case, if there be conflict, the court will give the statute the construction which upholds constitutionality. Where there is but one fair interpretation of the language that is the interpretation which must be given and we must construe it this way even if this renders it unconstitutional. State ex rel. Fargo v. Wetz, 40 ND 299, 305, 168 NW 835, 837, 5 ALR 731.

This statute involved gives the commissioner power to employ counsel and to bring an action in the name of the state. Has the legislature the right to so do? Before a law, or any portion thereof, can be declared to be unconstitutional, the enactment must be shown clearly to violate some provision of the Constitution of this State or of the United States. State ex rel. Fargo v. Wetz, 40 ND 299, 308, 168 NW 835, 838, 5 ALR 731. What provision of the Constitution does this law violate? "He who alleges a statute to be unconstitutional must be able to point to the particular constitutional provision violated." State ex rel. Linde v. Taylor, supra. Certainly it does not violate § 83 of the Constitution and this is the only section which by any stretch of imagination can be said to be affected. This section does not say the legislature may not at any time provide that under certain conditions a gubernatorial appointee may appoint private counsel to appear for the state in matters in which the state is interested. It places no limitation on legislative action. The legislature could limit the powers of the attorney general to purely criminal proceedings; to the giving of opinions. It could authorize any department of the government to employ its own counsel in any matter. In prescribing the duties of the attorney general it could enact an all-

comprehensive statute or it could limit the appearance of the attorney general to any matter which it saw fit. Before such a subsequent enactment can be said to be unconstitutional, it must be shown clearly, unequivocally and to a moral certainty, that the department in whom legislative power of the State is lodged has manifestly violated the Constitution after giving to the proposed law the fair meaning of the language used. This court said in State v. Rother, 56 ND 875, 886, 219 NW 574, 578: "The object of all interpretation and construction of statutes is to ascertain and carry out the intention of the lawmakers. . . . The remedy for . . . an unwise statute is not in interpretation, but in amendment or repeal."

In the same case cited this court quoted from Lewis's Sutherland, Statutory Construction, and approved this language: "If a law is plain, and within the legislative power, it declares itself and nothing is left for interpretation. It is as binding upon the court as upon every citizen. To allow a court in such a case, to say that the law must mean something different from the common import of its language, because the court may think that its penalties are unwise or harsh, would make the judicial superior to the legislative branch of the government, and practically invest it with the law-making power."

In State ex rel. Harness v. Roney, 82 Ohio St 376, 92 NE 486, 487, 19 Ann Cas 918, we find: "The province of construction is to ascertain and give effect to the intention of the Legislature, but this intent must be derived from the legislation, and not be invented by the court. To supply the intention and then give the statute effect according to such intention would not be construction, but legislation."

That the law is "within the legislative power" cannot be successfully denied, for the Constitution says the attorney general has just such powers as are prescribed by law and in no manner ties down the "prescribing" to any particular day—certainly not to the first enactment adopted after the Constitution went into effect. No one doubts that the state Constitution is not a grant of powers to the legislative department, but admits it is a limitation on its power, so that the legislature may enact any law not expressly or inferentially prohibited by the Constitution of the state or of the United States.

If, as stated by plaintiff in his brief, he waives the approach through demurrer because "it is important to have the primary issue determined" and defendant argues the main issue to be determined is the question of constitutionality, and this court says we must construe the law as we do otherwise there may be grave doubt of its constitutionality, then the issue is brought before us by a demurrer which cannot stand, and in McIntyre v. State Bd. of Edu. 71 ND 630, 635, 3 NW (2d) 463, we say "mere anxiety of parties and their consent are not sufficient to vest this court with jurisdiction to decide a constitutional question."

To me there are two main errors in this majority opinion: First, that it finds the only reasonable construction of this statute is that it was not intended in any way to modify previous statutory regulations making the attorney general the sole counsel to bring actions on behalf of the state or to appear for the state; and, second: that if it were the intent so to do, there would be grave doubts as to the constitutionality of the portion considered.

To me both of these views are erroneous. It was the intention of the legislature to grant this power to private counsel employed by the commissioner appointed by the governor, and I cannot see how such view would throw doubt on the constitutionality. To assume there are two reasonable constructions ignores the plain language of the statute and is in effect judicial legislation. The legislature, as was said before, may enact any legislation it sees fit unless it clearly and plainly violates constitutional provisions.

This case of Ex parte Corliss cited, was adopted by a divided court. However it was the interpretation, but there is nothing sacrosanct about the decision. While involving a serious question—the interpretation of the Constitution—there is no value in adhering to it if it be plainly wrong.

We may as well face the situation directly and admit that the holding in Ex parte Corliss is erroneous; that it hampers the legislative department of the government and puts a veto upon certain of its powers. The situation resolves itself to this, that though the commissioner commences the action, and though he may employ attorneys to assist him in his investigation, if he brings an action in the name

of the state he can have but one attorney—the attorney general. If that contention be correct, and the attorney general refuses to bring the action, what then?

The issue gets back to the decision in Ex parte Corliss, supra. Therein it is stated in effect, that offices which "are embedded in the Constitution . . . cannot be stripped by the legislature of the important duties inherently connected therewith, for if this can be done, then these offices were 'embedded in the Constitution' for no purpose." 16 ND 476, 114 NW 962. It is the mere "office" not "powers" that are mentioned in the Constitution. The opinion says, that if the legislature could modify or infringe on these "inherent functions" of the officers involved, then what is to hinder the legislature from divesting the governor, and the judges of their inherent functions, and why has not the legislature "the power to provide for the appointment of a special enforcement governor . . . , or a special enforcement court? The answer is that the Constitution "vests" the executive power in a governor, and the judicial power in the courts, and the Constitution specifies the exclusive powers of the governor and of the courts, but it does not with those of the attorney general. And yet this opinion does say: "We do not deny the power of the legislature to prescribe the duties for these officers, which power carries with it by implication the right to change such duties from time to time as the public welfare may demand; but we deny its power to strip such offices, even temporarily, of a portion of their inherent functions and transfer them to officers appointed by central authority."

Words used are interpreted as understood when used. "Executive power," "legslative power," "judicial power" are terms which at times may require interpretation and the Constitution to be construed accordingly; but no such idea is found in the Constitution regarding the attorney general.

If it were the intent of our constitutional fathers, and the deliberate judgment of the people adopting the Constitution, that the term "attorney general" carried with it certain inherent functions which could not be infringed upon, and had so "embedded in the Constitution" these inherent powers, then why would the Constitution not say so, and why does the Constitution say that "the powers and duties of the

. . . attorney general . . . shall be as prescribed by law?" The people did not need to provide for an attorney general. Could it be said, that if they had failed to do so, nevertheless, there would be such an office because of the inherent functions which came down to us from the English law? If it be so, that there are "inherent functions," which the people assumed to be in existence when provision was made for an attorney general, why does the Constitution say that the duties of such officers shall be such as prescribed by law? Would he have any functions if the law did not prescribe them? Do we go back to the theory of attorney general? If so, then why was provision made for his election. For in the olden days the attorney general was the appointee of the executive. The king was the executive. He appointed the attorney general, and he prescribed the duties of the attorney general. The legislature prescribes the duties of the attorney general. And the legislature may widen these or limit these, and if they repeal the statute entirely, then he would have no duties. The power that prescribes the duties may also provide that these duties will be shared by others. This power is exclusively in the legislature, and the legislature does not need to go back to the time of Edward I to determine what are the "inherent functions" of the attorney general. There are no inherent functions recognized by our Constitution. I find nothing in the "Journal" nor in the "Debates" of the constitutional convention to indicate any member of the constitutional convention considered this. The people said the legislature shall prescribe the duties of that officer, and the people through their representatives the legislature, say how long these functions shall last, how they shall be modified, limited or shared. If the legislature, by foolish enactments, should so limit the duties of this officer as to depart from the old established concept, the question of its wisdom is to be determined by the people themselves, when they elect the legislature. It is not for the court to say that because, in the days of the Plantagenets, the attorney general had certain peculiar functions conferred upon him by the king, the legislature of North Dakota is bound thereby. For this court to hold that because of the plain implications in Ex parte Corliss there would be substantial doubt as to constitutionality, and

to avoid this give a construction to the statute it will not bear, is to determine the legislature did not mean what it said and that the court gives this construction because of a decision which I believe should be overruled.