Joyce ZIMMERMAN, Plaintiff and Respondent,

v.

MINOT STATE COLLEGE, Defendant and Appellant.

Civ. No. 8782.

Supreme Court of North Dakota.

May 31, 1972.

Helgi Johanneson, Atty. Gen., and Gerald W. VandeWalle, Asst. Atty. Gen., Bismarck, for defendant and appellant.

Palda, Palda, Peterson, Anderson & Tossett, Minot, for plaintiff and respondent.

Rausch & Chapman, Bismarck, amicus curiae.

PAULSON, Judge.

The plaintiff in this action, Joyce Zimmerman, was employed as an instructor in the German Department of Minot State College [hereinafter College] during the

1969–1970 school year. She had been employed in this position for more than three years, but for less than the six years required to achieve tenured status. On January 8, 1970, Miss Zimmerman was notified in writing by the president of the College that she would not be rehired for the 1970–1971 school term.

The parties stipulated that Miss Zimmerman's employment was not terminated for cause but, instead, because of decreased enrollment in the German Department of the College. The only other instructor in the College's German Department had more years of service than Miss Zimmerman and there is no question but that if it were necessary to terminate the employment of one of such instructors, it would be Miss Zimmerman whose employment should be terminated.

Being aggrieved by the termination of her employment, Miss Zimmerman requested a hearing before the State Board of Higher Education, which hearing was held on April 16, 1970. That Board, on April 22, 1970, notified Miss Zimmerman that she had thirty days in which to accept a provisional employment contract for the first half of the 1970–1971 school year. This employment was offered as a settlement in lieu of the notice of complete termination of employment which had previously been forwarded to her. The employment contract provided that Miss Zimmerman was to report to work each day at the College and remain there for eight hours, with no indication that her services would be used for teaching courses for which she was qualified.

Rather than accept the provisional employment contract, Miss Zimmerman commenced an action in the District Court of Ward County to restrain and enjoin the College from terminating her employment contract without proper notice or, in the alternative, to award her damages in the amount of her annual salary for the 1970–1971 school year. After issue was joined,

the district court granted Miss Zimmerman's motion for judgment on the pleadings and awarded her damages in the amount of her annual salary, less the amount she had received as an instructor in the Surrey Public School system during the 1970–1971 school year.

It was Miss Zimmerman's contention in the district court and here on appeal that the College could not terminate her employment without giving her twelve months' notice. This contention is based on the following pertinent language from the Faculty Handbook of Minot State College which was given to Miss Zimmerman at the time she commenced her employment with the College:

"NORTH DAKOTA STATE BOARD
OF HIGHER EDUCATION

"POLICY STATEMENT ON
TENURE

"Adopted by State Board of Higher Education March, 1964

. . . . . .

"2.

"The services of a person with tenure shall be terminated only for adequate cause. The specific reason for the termination of the appointment of a person with tenure shall be made by notice in writing by the president and presented to the person involved and to the State Board of Higher Education. The date of termination shall be twelve months from the date of approval of the dismissal action by the State Board of Higher Education.

"If the faculty member's continued presence in the classroom is shown to be clearly harmful to the institution, suspension by the president may take place

immediately subject to the State Board of Higher Education.

"When approval of a decision to dismiss EXCEPT IN A CASE INVOLVING MORAL TURPITUDE OR SERIOUS CRIMINAL OR UNPATRIOTIC ACT is given by the State Board of Higher Education in accordance with the provisions and procedure delineated in Section 3, the faculty member's annual salary, as stated in his last previous salary notice, will be paid to him within the year following the date of final approval by the State Board.

"In the event a reduction in staff becomes necessary because of financial stress, legislative action, loss in enrollment, consolidation of departments, or dropping of courses, the termination of the appointment of a person with tenure shall be bona fide; consideration shall be given to departmental seniority in the retention of faculty members. The position shall not be filled for at least two years unless the person dropped from the position has been given an opportunity to return to it.

"Notice of termination of services of faculty members, including those holding probationary appointments shall be according to the following schedule:

"1. At least three months before the end of the faculty member's duties during the first academic year of service exclusive of the summer session;

"2. At least six months before the end of the second academic year of such service;

"3. At least twelve months before the expiration of an appointment after more than two years of academic service."

The College, as the appellant in this appeal, contends that the decision of the trial court grants greater rights to an untenured teacher than to a tenured teacher. The College further contends that Miss Zimmerman was given sufficient notice of termination because the notice given was in conformance with § 15–47–27 of the North Dakota Century Code [Ch. 158, § 65, 1961 S.L.], which provided:

"15–47–27. *Time for renewal of teachers' contracts.*—Any teacher who has been employed by any school district *or state board of higher education* in this state during any school year, shall be notified in writing by the school board *or state board of higher education,* as the case may be, not earlier than the fifteenth day of February and not later than the fifteenth day of April in the school year in which he or she has been employed to teach, of the board's determination not to renew the teacher's contract for the ensuing school year, and failure to give such written notice on or before said date shall constitute an offer on the part of the board to renew the contract for the ensuing school year under the same terms and conditions as the contract for the then current year. On or before April fifteenth in any year and not earlier than February fifteenth, the board shall notify all teachers of a date, which shall not be less than thirty days after the date of such notice, upon which they will be required to accept or reject such proffered re-employment, and failure on the part of the teacher to accept said offer within such time shall be deemed to be a rejection of the offer. Any teacher who shall have accepted the offer of re-employment, either by the action of the board, or nonaction of the board on or before April fifteenth, as herein provided, shall be entitled to the usual written contract for the ensuing school year, as provided by law and shall notify the board in writing of his or her acceptance or rejection on or before the date specified by the board or before May first whichever is earlier. Failure on the part of the teacher to so notify the board

shall relieve the board of the continuing contract provision of sections 15–47–26 through 15–47–28. Nothing in this section shall be construed as in any manner repealing or limiting the operation of any existing law with reference to the dismissal of teachers for cause." [Emphasis added.]

Section 15–47–27, N.D.C.C., was amended by the 1971 Legislature to delete any reference to the State Board of Higher Education, thus indicating that thereafter § 15–47–27 would not apply to colleges or universities. However, the language of § 15–47–27, N.D.C.C., as it read prior to the 1971 amendments is pertinent to the case at bar.

We will consider first the College's contention that sufficient notice was given to Miss Zimmerman by virtue of its conformance with § 15–47–27, N.D.C.C. To answer this contention it is necessary to consider the power and duties of the State Board of Higher Education. This court, in Posin v. State Board of Higher Education, 86 N.W.2d 31, 35 (N.D.1957), stated:

"The power and authority of the Board is to be gathered from the constitutional provision with reference to its creation and the designation of the duties imposed upon it by the statutes."

The constitutional provision which created the Board is Article 54 of the Amendments to the Constitution of the State of North Dakota, which provides:

*"Article 54*

"1. A board of higher education, to be officially known as the State Board of Higher Education, is hereby created for the control and administration of the following state educational institutions, to-wit:

. . . . . .

"(4) The State Normal Schools and Teachers Colleges, at Valley City, Mayville, Minot and Dickinson.

. . . . . .

"6. . . .

"(b) The said State Board of Higher Education shall have full authority over the institutions under its control with the right, among its other powers, to prescribe, limit, or modify the courses offered at the several institutions. In furtherance of its powers, the State Board of Higher Education shall have the power to delegate to its employees details of the administration of the institutions under its control. The said State Board of Higher Education shall have full authority to organize or re-organize within constitutional and statutory limitations, the work of each institution under its control, and do each and everything necessary and proper for the efficient and economic administration of said State educational institutions.

. . . . . ."

The statutory duties imposed upon the board are found in Chapter 15–10 of the North Dakota Century Code. The section here applicable is § 15–10–17, which provided:

15–10–17, N.D.C.C. *"Specific powers and duties of board of higher education.* —The state board of higher education shall have all the powers and perform all the duties necessary to the control and management of the institutions described in this chapter, including the following:

"1. To elect and remove the president or other faculty head, and the professors, instructors, teachers, officers, and other employees of the several institutions under its control, and to fix their salaries within the limits of legislative appropriations therefor, and to fix the terms of office and to prescribe the duties thereof:

"3. To adopt rules, regulations, and bylaws for the government of

each of such institutions and of all the departments and branches thereof;

. . . . . . "

■ Generally stated, Article 54 of the Amendments to the North Dakota Constitution and Chapter 15–10 of the North Dakota Century Code provide that the Board is created to manage and supervise the colleges under its control. Nord v. Guy, 141 N.W.2d 395 (N.D.1966). It was pursuant to these duties of management and supervision that the Board promulgated its Policy Statement on Tenure upon which Miss Zimmerman relies.

⌄ We are faced here with reconciling the provisions of § 15–47–27, N.D.C.C., with the Board's Policy Statement, since the provisions are patently inconsistent. In reconciling these provisions we are aided by the provisions of § 1–02–07 of the North Dakota Century Code:

"1–02–07. *Particular controls general.* —Whenever a general provision in a statute shall be in conflict with a special provision in the same or in another statute, the two shall be construed, if possible, so that effect may be given to both provisions, but if the conflict between the two provisions is irreconcilable the special provision shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest legislative intent that such general provision shall prevail."

■ Since the Board's Policy Statement was made pursuant to § 15–10–17, N.D.C.C., in effect we have a conflict between § 15–10–17 and § 15–47–27, N.D.C.C. Section 15–10–17 is the special provision found in Chapter 15–10, N.D.C.C., which relates specifically to the Board. Section 15–10–17 is captioned "*Specific* powers and duties of board of higher education [emphasis added]" and enumerates the specific powers of

the Board, including the power to elect and remove instructors and to fix the terms of office, as well as to adopt rules, regulations, and bylaws for each institution. Section 15–10–17 authorizes the Board of Higher Education to promulgate rules which are more specific than the provisions of § 15–47–27, which is the general statute found in Chapter 15–47, N.D.C.C., entitled "General Provisions", which relates to education in general. The Board, pursuant to § 15–10–17, adopted specific rules in the year 1964 and these rules are contained in the Faculty Handbook of the Minot State College and were revised every year during the time that Joyce Zimmerman was employed as an instructor, as is evidenced by examining the Handbook assigned to Joyce Zimmerman. The Board has continued to exercise the powers authorized by § 15–10–17 and the rules so promulgated by the Board are controlling, since the Legislature of this State has not enacted any legislation subsequent to the adoption of the rules which would in any manner limit or overrule them. Applying § 1–02–07, the provisions of § 15–10–17, together with the Policy Statement promulgated by the Board pursuant to that section, must prevail over the general provisions of § 15–47–27. This leads to the conclusion that compliance with the notice requirements of § 15–47–27 is not sufficient —the notice requirements of the Board's Policy Statement must be met before Miss Zimmerman's employment can be terminated.

■ Our decision on this issue is further substantiated by the rule that this court, in construing statutes, will avoid construction which gives rise to doubt regarding the constitutionality of a statute. State v. Erickson, 72 N.D. 417, 7 N.W.2d 865 (1943). By giving effect to the provisions of § 15–10–17 rather than to those of § 15–47–27 the constitutional issue is avoided. Since the questionable provisions were deleted from § 15–47–27 by the 1971 Legislature, the consideration of the constitutional issue would not serve a very useful purpose.

Section 1–02–27, N.D.C.C., also supports our decision in this case. That section provides:

1–02–27, N.D.C.C. *"Conflicts adjusted.* —If the provisions of any chapter or title conflict with or contravene the provisions of any other chapter or title, the provisions of each chapter or title must prevail as to all matters in question arising thereunder out of the same subject matter."

■ The controversy in this case arose from a question as to the powers and duties of the State Board of Higher Education. Thus, Miss Zimmerman's employment contract with Minot State College must be examined in the light of the Board's Policy Statement. The Board's Policy Statement was included in the Faculty Handbook which Miss Zimmerman received when she was employed by the College and the parties have stipulated that such Policy Statement forms a part of the contract between the parties. We find that the Policy Statement sets forth in clear language that each teacher with at least two years of service, including those holding probationary appointments, must be given notice at least twelve months prior to the expiration of an appointment before such appointment can be terminated because of loss in enrollment. Since Miss Zimmerman did not receive the required notice, accordingly she must prevail.

We have considered the College's contention that Miss Zimmerman is receiving better treatment than the Policy Statement requires for tenured teachers. While the question of notice requirements for tenured teachers is not before the court, we are unable to construe the Policy Statement in a manner which would allow the College to terminate the employment of a tenured teacher because of decreased enrollment without giving twelve months' notice. The Handbook makes no distinction as far as notice requirements between tenured teachers and probationary teachers, with more than two years' experience, when termina-

tions are made because of loss in enrollment.

The judgment of the district court is affirmed.

STRUTZ, C. J., and ERICKSTAD, TEIGEN and KNUDSON, JJ., concur.