### In the Matter of the WELFARE OF Craig Allan UDSTUEN.

#### No. C6–84–495.

Court of Appeals of Minnesota.

May 15, 1984.

Douglas W. Thomson, Deborah Ellis, St. Paul, for appellant, Jerry Udstuen, Father.

Thomas Foley, Ramsey County Atty., Steven C. DeCoster, Asst. Ramsey County Atty., St. Paul, for respondent Ramsey County.

Marguerite McCarron, Public Defender, St. Paul, Guardian ad Litem.

Considered and decided by POPOVICH, C.J., LANSING, and HUSPENI, JJ., with oral argument waived.

## OPINION

HUSPENI, Judge.

Appellant Jerry Udstuen's parental rights were terminated August 8, 1983 based upon the trial court's finding, pursuant to Minn.Stat. § 260.221, b(7) (Supp. 1983), that Craig Allen Udstuen is a neglected child and in foster care. Jerry Udstuen appeals from the order. We affirm.

## FACTS

Craig Allan Udstuen was born to appellant Jerry Udstuen and Karen Udstuen prematurely on September 2, 1981. On December 20, 1981, when Craig was 3½ months old, he was taken to Bethesda Hospital because he had stopped breathing and was experiencing seizures.

At the hospital, Craig was diagnosed as having suffered severe trauma in various stages of healing. Dr. Tilelli, the examining physician, found subarachnoid hemorrhaging and concluded that the bleeding was caused by recent trauma to the child. Craig also suffered a retinal hemorrhage, a

frequent sign of trauma in children. Craig had linear cuts along the creases of the palm of his left hand which were consistent with a comb being run over his hand with considerable force. Craig's back bore a fresh linear bruise that appeared to be the result of being struck by the edge of something. Both the cut and the bruise were less than twenty-four hours old. At the hospital, Craig's lungs had been drained of fluid and, through X-rays, Craig was determined to have fractures of the ribs and a linear skull fracture, all in the process of healing.

After Craig's admission to the hospital, appellant admitted to his wife that he had held Craig's face underwater and had drawn a comb against his palm. Later, in interviews in the hospital with social workers, a doctor, and a child abuse investigator with Ramsey County Human Services Department, appellant admitted pushing Craig against the bed and holding his face underwater.

On January 6, 1982, a Ramsey County Grand Jury returned an indictment against Jerry Udstuen charging him with attempted murder in the second degree and first degree assault for the abuse of his son. After a jury trial at which appellant testified on his own behalf, he was convicted of assault in the first degree on April 29, 1982. Pending sentencing, appellant was ordered to have no contact with his son. On May 12, 1982, Craig was adjudicated neglected by the Ramsey County Juvenile Court and, on June 28, 1982, appellant was sentenced to the custody of the Commissioner of Corrections for a period of 72 months. In September of 1982, a notice of appeal to the Supreme Court was filed in the criminal case and, on March 23, 1984, after the filing of the instant appeal, the conviction was upheld by order of the Minnesota Supreme Court.

On March 9, 1983, a petition was filed by the Ramsey County Community Human Services Department requesting an order terminating the parental rights of Karen and Jerry Udstuen to their child Craig.

Karen Udstuen voluntarily terminated her parental rights on May 19, 1983.

On July 18, 1983, the petition for termination of parental rights was heard in Ramsey County District Court, Juvenile Division. On August 8, 1983, the court issued its order terminating the parental rights of Jerry Udstuen.

Craig Udstuen is currently in foster care and has been so since his release from the hospital in the spring of 1982. His foster mother has a LPN degree and has received special training for the care and management of Craig. As a result of the abusive treatment given Craig by his father, Craig suffers from cerebral palsy and brain damage. He is unable to walk, crawl, hold things in his hands, or feed himself. Craig suffers from seizures and traumas. He experiences night-screams and his position must be changed every few hours during the night because he cannot move himself. An orthokinetic wheelchair equipped with a halo to hold his head upright is used to transport him.

At the time of the hearing in July of 1983, appellant had not seen his son since December 21, 1981. Before the hearing, appellant was allowed approximately twenty minutes to see and hold his son. At the hearing, appellant refused to waive his Fifth Amendment right against self-incrimination and to testify on his own behalf. On his behalf, Dr. Carl Schwartz, a psychiatrist who examined appellant, testified that Jerry Udstuen was sincere in his desire to assume parental responsibilities and that, in his opinion, termination of appellant's parental rights would not be in appellant's best interests.

## ISSUES

1. Whether the State satisfied its burden of proving that Craig was "neglected and in foster care".

2. Whether the State satisfied its burden that the conditions existing at the time of the hearing would continue for a prolonged, indeterminate period of time.

3. Whether the trial court erred in hearing the petition to terminate appellant's rights before his criminal appeal was decided.

## ANALYSIS

1. Minn.Stat. § 260.155, subd. 7 (1982), lists factors bearing on whether a child may be found to be "neglected and in foster care":

(1) The length of time the child has been in foster care;

(2) The effort the parent has made to adjust his circumstances, conduct, or condition to make it in the child's best interest to return him to his home in the foreseeable future, including the use of rehabilitative services offered to the parent;

(3) Whether the parent has visited the child within the nine months preceding the filing of the petition, unless it was physically or financially impossible for the parent to visit or not in the best interests of the child to be visited by the parent;

(4) The maintenance of regular contact or communication with the agency or person temporarily responsible for the child;

(5) The appropriateness and adequacy of services provided or offered to the parent to facilitate a reunion;

(6) Whether additional services would be likely to bring about lasting parental adjustment enabling a return of the child to the parent within an ascertainable period of time; and

(7) The nature of the effort made by the responsible social service agency to rehabilitate and reunite the family.

Each of those factors was addressed by the trial court.

The trial court found, in Findings of Fact Numbers 12 and 13:

12. Termination of parental rights would clearly and convincingly be in Craig's best interests. His permanently handicapped condition and need for extraordinary care require an opportunity now to be in a permanent family where he can develop attachments, experience a stable and predictable environment, and bond to adults in his life who will plan for his future. In his condition, a nurturing permanency is especially crucial.

13. Craig continues to be a neglected child in foster care. Respondent's present incarceration, his almost total lack of interest, or initiative in expressing an interest in Craig, the brief time he lived with Craig before foster placement, and the extraordinary needs Craig has for special care all make it highly unlikely that any additional resources or services would result in a lasting parental adjustment that would enable Craig to return to respondent.

At the time of the hearing, Craig had been in the care of his parents for approximately six weeks of the first twenty-two months of his life. The balance of that time, he was in the hospital or in foster care. Despite his earlier admissions and his conviction of first degree assault, appellant does not now admit battering his son. According to his own expert witness, if it is true that appellant is the cause of Craig's injuries, appellant would not be a good candidate for treatment.

After his conviction, appellant had been under a court order not to see his son and was later incarcerated for the child abuse. Physical contact with his son was impossible, but appellant made no showing of any attempt to learn about Craig or his progress prior to the filing of the petition for termination. No contact was made until the hearing was imminent. Since then, appellant has had some contact with the agency and with Craig's foster mother.

Appellant complains that there has been no effort to reunite him with his son, to provide services to promote a reunion, or to rehabilitate the family. Ramsey County Community Human Services did not include appellant in the case plan developed for Craig. Appellant had been convicted of

battering the child, was in prison for those actions, would not be released until 1986, and did not admit to his participating in the assault. The trial court found that the lack of a case plan was excusable under the circumstances.

■ Although the best interest of the child is not enough to terminate a parent's rights with respect to that child, the interests of the parent and the child must be balanced. *Matter of Welfare of H.G.B.,* 306 N.W.2d 821, 827 (Minn.1981). Balancing the interests does not mean that the interests of the parent and the child are weighed equally. Instead "both the interests of the parent and child are considered along with the circumstances of the particular case in an effort to determine which of these interests is to predominate. Balancing, therefore, is an active process of determining the weight of two potentially opposing interests rather than a static attribution of an equal weight to each interest." *Id.* at 826. In this case, the trial court properly decided that Craig's special needs clearly and convincingly outweigh the interests of his father.

■ Although the fact that the parent is in prison is not enough in itself to warrant termination of parental rights,. *Staat v. Hennepin County Welfare Board,* 287 Minn. 501, 178 N.W.2d 709 (1970), that fact, together with other evidence, may be the basis for such a decision. *Matter of Welfare of Walker,* 287 N.W.2d 642 (Minn. 1979); *In re Welfare of H.M.P.W.,* 281 N.W.2d 188 (Minn.1979). It should be noted here that the reason for incarceration of appellant is the crime committed against Craig, the subject of the petition for termination. *Matter of Welfare of Suchy,* 281 N.W.2d 723 (Minn.1979); *In re Welfare of Scott,* 309 Minn. 458, 244 N.W.2d 669 (1976).

In this case, appellant has been found guilty by jury trial of the abuse of his son, Craig, which caused the severe handicaps from which he suffers. That conviction has since been upheld by the Minnesota Supreme Court.

Although appellant's expert, Dr. Schwartz, testified at the termination hearing that termination of appellant's parental rights would not be in appellant's best interest, this opinion was based on the assumption that appellant was speaking the truth when he denied having battered his son. Dr. Schwartz stated that he would agree that appellant's rights should be terminated if, in fact, appellant was guilty of assaulting Craig.

■ 2. The State is required not only to satisfy the statutory conditions for termination of parental rights, it must also show that the conditions existing at the time of the hearing will continue for a prolonged, indeterminate period of time. *Matter of R.M.M.,* 316 N.W.2d 538, 541–42 (Minn. 1982); *Matter of Welfare of Chosa,* 290 N.W.2d 766 (Minn.1980).

It is undisputed that Craig's condition is not expected to improve. As a result of the maltreatment by his father, Craig will remain severely mentally and physically handicapped. The only aspect of his condition that is expected to change is his adoptability. As he matures, his chances of being adopted into a permanent home lessen. Certainly it is in the best interest of Craig that he be placed in a permanent family relationship as soon as possible. His need to experience a stable, nurturing environment and to form bonds with responsible adults cannot be overemphasized.

Appellant will not be released from prison until 1986. He seeks to then establish a parental relationship with his son. The trial court found that Craig's needs for special care and appellant's incarceration, combined with his former indifference to the child, make it unlikely that any lasting parental relationship could be established. At the time of the hearing, appellant's conviction was on appeal and, he argues, not final. Had his conviction been reversed, it is conceivable that he would have been released much earlier than was expected. However, the termination of his parental rights was not based solely on his incarceration. The trial court was justified in ter-

minating appellant's parental rights before the appeal was decided.

■ 3. Appellant argues that, at best, the order of the trial court terminating his parental rights was premature. He urges that his present incarceration has made it impossible for him to demonstrate his ability to care for his son. Weighing the interests of Craig with those of his father, Craig's immediate need for a stable permanent home outweighs his father's desire to provide a future home for Craig.

Finally, appellant argues that the termination hearing should have been continued until after the appeal of his criminal conviction was decided. He claims that he was prevented from taking the stand on his own behalf without giving up his Fifth Amendment right against self-incrimination.

At the time of the parental rights hearing, appellant had already testified at his criminal trial, waiving his privilege against compulsory self-incrimination and subjecting himself to appropriate cross-examination by the State about the criminal charges he was facing. *Harrison v. United States,* 392 U.S. 219, 222, 88 S.Ct. 2008, 2010, 20 L.Ed.2d 1047 (1968). In consideration of the particular facts and circumstances of this case, we find appellant's Fifth Amendment argument to be without merit.

### DECISION
■ The trial court did not err in terminating the parental rights of father convicted and imprisoned for abuse of his child when his conviction was on appeal and he refused to take the stand to testify in his own behalf.

Affirmed.