**In the Matter of the WELFARE OF M.M.D., Child.**

**No. C8–86–1670.**

Court of Appeals of Minnesota.

Aug. 11, 1987.

Thomas Buttweiler, St. Cloud, for appellant mother.

Roger S. Van Heel, Stearns Co. Atty., Richard J. May, Asst. Stearns Co. Atty., St. Cloud, for respondent Stearns County.

Considered and decided by LESLIE, P.J., and SEDGWICK and LANSING, JJ., with oral argument waived.

## OPINION

SEDGWICK, Judge.

M.M.D.'s mother appeals the termination of her parental rights claiming the trial court did not find that past and present conditions were likely to continue for a prolonged and indeterminate period of time. We affirm.

## FACTS

M.M.D. was born May 17, 1980 and the first neglect petition was filed in 1980 because of her mother's chemical dependency, inability to manage financing, provide housing and lack of hygiene affecting both mother and daughter. After a short court involvement in 1980, the petition was dropped. Stearns County Social Services has been actively involved with this mother from early 1982. Several plans to improve the situation and reform the mother's parenting skills were tried and failed because mother failed to cooperate. The second neglect petition was filed in November 1984 and mother admitted the allegations of that petition that the child was sexually abused by mother's friend, the mother lacked parental authority to prevent the abuse, mother's chemical dependency and lack of supervision of M.M.D.

M.M.D.'s mother spent almost all of her life under the care of the State in a series of foster homes. She was sexually abused. Her life as an adult has been equally troubled. She lives on government payments. She abuses both drugs and alcohol. In 1973 her parental rights to a son were terminated. She has a borderline I.Q. At age 34, her mental age is 13 years and 5 months, and her social age is 10½ years. Her personality problems significantly undermine her ability to parent.

M.M.D.'s mother is distrustful, rebellious and cannot tolerate authority. Dr. Terry Nelson, a consulting psychologist, has diagnosed her as suffering from a social personality disorder. His prognosis for improvement in the mother's personality or parenting skills was extremely pessimistic. The mother's counselor/therapist, Sondra Lawrence, diagnosed an oppositional disorder, a mental illness characterized by resistance to authority.

M.M.D. has experienced deprivation and neglect because of her mother's personality. Typically, their living quarters are a mess with garbage, newspapers and clothes strewn about. Minimal attention is paid to nutrition and hygiene. The child selects her own food, sometimes having coke and chips for breakfast. Inattention to hygiene resulted in M.M.D. having teeth pulled and capped because of decay or abscesses.

Dr. Leah Subotnik, a licensed consulting psychologist, characterized M.M.D. as being an emotionally damaged child. The mother's erratic behavior has resulted in role reversal between the parent and child. M.M.D. provides emotional support and direction for her mother and is unable to accept normal childhood feelings of needing to be cared for. Dr. Subotnik testified that children who behave as "little adults" often fall apart emotionally in adolescence and "deal" with their anger through sexual promiscuity, drugs and in the worst cases, suicide. M.M.D.'s response to therapy has been inhibited by her weekly contact with her mother. The child has been sexually abused by a male babysitter, a friend of the mother, and the mother is unable to understand inappropriate touching or sexual behavior.

Although the mother's past relationship with social services and counseling has been one of indifference and intolerance, she has recently attempted change in order to regain custody of M.M.D. She has started therapy and attended A.A. meetings. In the past, therapy has been terminated because of her failure to follow through. Presently, she has made some limited progress, and has begun to control her anger. She has made little progress towards other goals, among them, understanding sexual abuse and appropriate touching, establishing a support network, understanding her role as parent, and increasing her self-esteem. The therapist believed the mother had made a start, but was guarded in predicting future success. She did predict that difficulties of parenthood would only escalate as M.M.D. grew older.

## ISSUE

Did the trial court find that past and present conditions are likely to continue for a prolonged and indeterminate period of time?

## ANALYSIS

Parental rights may be terminated pursuant to Minn.Stat. § 260.221 (1986). The unknown father's rights were terminated for abandonment and there has been no appeal. The mother's rights were terminated on four separate grounds, any one of which is sufficient. In brief, the grounds are: 1) substantial, continuing neglect; 2) conditions and conduct exist which are permanently detrimental to M.M.D.'s physical and mental health; 3) following a determination of neglect, all court directed efforts to correct the situation have failed; and 4) the child is neglected and in foster care. Minn.Stat. § 260.221(b)(2), (4), (5), (7).

Termination of parental rights must be justified by clear and convincing evidence. *In re T.M.D.*, 374 N.W.2d 206, 211 (Minn.Ct.App.1985). The law presumes the natural parent capable of caring and providing for his or her child, and the courts will "exercise great caution in termination proceedings, finding such action proper only when the evidence clearly mandates such a result in accordance with statutory grounds." *Id.* at 211 (quoting *In re Kidd*, 261 N.W.2d 833, 835 (Minn.1978)). The findings must be clear and specific. Termination cannot be justified simply on past and present conditions, but because "the conditions existing at the time of the hearing will continue for a prolonged, inde-

terminate period of time." *In re Udstuen,* 349 N.W.2d 300, 304 (Minn.Ct.App.1984).

■ The court's focus must consider not only the child's interest, but that of the parent. *Id.* at 304. The balance, however, need not be equal; the parent's and child's interests are evaluated in conjunction with the particular circumstances and a determination is reached as to whose interests are more weighty. *Id.* In this case, M.M.D.'s need for a stable and healthy environment, as well as a parent-child relationship, is balanced with the mother's need to receive love, to give love, and to have a reason to reform her life. Although the loss of her daughter may undermine the mother's shaky existence, the balance clearly favors the child.

■ The trial court's decision must be based on the parent's failure to care for and nurture the child both now and into the future; it cannot reflect simple, obvious factors such as mental illness, or a low I.Q. *See In re J.J.B.,* 390 N.W.2d 274, 281 (Minn.1986); *In re T.M.D.,* 374 N.W.2d 206, 211 (Minn.Ct.App.1985). The court must only consider the effect such limitations impose on present and future parenting efforts. *In re J.J.B.,* at 281.

■ The trial court determined that the parent-child relationship was characterized by role reversal, M.M.D.'s emotional damage, and the mother's incapacity to handle her own needs or those of her daughter. The court's findings accurately reflect the overall situation in the past and present. The trial court made the following finding in reference to the future.

That [the mother's] emotional and psychological needs are sufficiently great as to render effective parenting of [M.M.D.] by [her mother] improbable. That [the mother] has a low probability of ever learning effective parenting skills and that as [M.M.D.] matures, [her mother] will find it more and more difficult to properly parent [M.M.D.].

The findings reflect the court's assessment that the problems of the past will persist in the future, and will escalate in severity. The finding is based on the testimony of Patricia Atwood of social services, and Drs. Nelson and Subotnik, all of whom were of the opinion that mother could not effectively provide for M.M.D.'s physical or emotional needs now or in the future. The mother's therapist, Sondra Lawrence, refused to venture an opinion as to whether her patient could ever cope with parenthood or when such a change might occur.

The case is comparable to *In re T.M.D.* The mother had an I.Q. of 70, was a ward of the state for most of her childhood, and had four illegitimate children. Her relationship with social services was very difficult and she had severe psychological problems akin to M.M.D.'s mother. The mother's problems greatly affected her children and even though witnesses testified she had improved and made strides, they believed her unable to cope with the children, who had become problems because of her. The court recognized that children's needs increase as they grow older, and that the psychological problems which devastated the children were certain to continue. This court ended with language fully applicable to this situation.

[O]ur decision is not an indictment of [the mother]. Rather it is a recognition that this woman, who has herself been victimized so many ways and for so long, is simply unable to care for her child even though she loves him. Her inability to do so threatens the mental and physical health of her son.

374 N.W.2d at 212 (quoting *In re R.M.M., III,* 316 N.W.2d 538, 542 (Minn.1982)).

We reach the same conclusion. The termination of parental rights was justified by the evidence and the trial court's findings.

## DECISION

The trial court did not err in finding that conditions prevalent in the past and the present would continue for a prolonged and indeterminate period of time.

Affirmed.