In the Matter of the CHILDREN OF Aeropajito VASQUEZ.

No. C3–02–1684.

Court of Appeals of Minnesota.

April 1, 2003.

Robert J. Lawton, St. Paul, MN, for appellant Aeropajito Castro Vasquez.

Susan Gaertner, Ramsey County Attorney, Heather McCleery, Assistant Ramsey County Attorney, and Margaret L. Gustafson, Baker Court, St. Paul, MN, for respondent Ramsey County Community Human Services Department.

David Oslund, Minneapolis, MN, for A.C.C., A.U.C., J.S.C., and C.I.C.

Paul Bergstrom, St. Paul, MN, for guardian ad litem.

Considered and decided by SHUMAKER, Presiding Judge, RANDALL, Judge, and WRIGHT, Judge.

## OPINION

GORDON W. SHUMAKER, Judge.

This is an appeal from an order for the termination of a father's parental rights to four children. Sufficient evidence supports the district court's findings that (1) a case plan for the father would have been futile and therefore unreasonable; (2) the father has abandoned his children; (3) the father has failed to comply with his parental duties; (4) the father is palpably unfit to be a parent; (5) the father is not the adjudicated father of two of the children; and (6) all four of the children are neglected and in foster care. Because the district court's findings are not erroneous and provide sufficient reasons to terminate the father's parental rights, we affirm.

## FACTS

In July 2000, appellant Aeropajito Vasquez fatally shot his wife. Appellant had a lengthy history of domestic abuse and had threatened to kill his wife on numerous occasions. He was eventually convicted of second-degree murder and is currently incarcerated at Stillwater prison. Appellant will not be eligible for release until 2023, by which time the children will be adults.

After their mother's murder, the minor children, A.C.C. (born 5/26/90), A.U.C. (born 3/20/91), J.S.C. (born 5/21/92), and C.I.C. (born 9/19/96), lived at the homes of their paternal grandmother or their paternal aunt. All of the children have special needs. According to affidavits and reports in the record, the children were moved between the two homes and were not being well taken care of at either home. For example, they had no consistent routine; A.U.C., who has ADHD, did not receive his medication regularly; they did not receive any counseling; and their aunt did not allow them to attend their mother's funeral. In addition, appellant's family threatened any friends or maternal family members who showed an interest in the children's welfare.

The children's maternal aunt filed a petition for custody of the children. On December 15, 2000, the Ramsey County Community Human Services Department (the county) placed all of the children in a temporary emergency shelter after it discovered that appellant's family was planning to move with the children to Mexico before the December 18, 2000, custody hearing. On December 18, 2000, the county filed a petition alleging that the children were in need of protection or services. The court assumed continuing emergency protective care of the children, assigned a guardian ad litem, and ordered the county to place the children in a shelter or foster care. After a hearing on February 9, 2001, the court adjudged the children to be in need of protection or services (CHIPS).

After the CHIPS adjudication, the county provided the court with a case plan in early March 2001 for each child and established for each a primary permanency plan to live with relatives. At that time, the county did not provide a specific case plan for appellant, stating that a case plan aimed at returning the children to appellant's day-to-day care would be futile because of his lengthy incarceration in Stillwater prison.

While appellant was in prison, he initially maintained telephone contact with his oldest child. The court limited appellant's contact with his children to written communication after appellant's telephone conversations became inappropriate and upset his oldest child. Appellant's letters, however, also contained inappropriate communication.

At the end of March 2001, the county filed a petition to terminate appellant's parental rights as to all four children. After a hearing on July 15, 2002, the district court terminated appellant's parental rights. Appellant now challenges the termination of his parental rights.

## ISSUES

1. Did the district court commit clear error when it found that the county was not required to provide appellant with a case plan?

2. Did the district court commit clear error by finding that the evidence supported the termination of appellant's parental rights on six statutory grounds?

## ANALYSIS

On review in a termination-of-parental-rights proceeding, this court must determine whether the district court's findings address the statutory criteria, are

supported by substantial evidence, and are not clearly erroneous. *In re Welfare of D.D.G.,* 558 N.W.2d 481, 484 (Minn.1997). Although this court defers to the district court's findings, this court exercises great caution in proceedings to terminate parental rights. *In re Welfare of A.J.C.,* 556 N.W.2d 616, 622 (Minn.App.1996), *review denied* (Minn. Mar. 18, 1997).

## I

██ Appellant argues that, in the August 2002 order terminating his parental rights, the district court's finding that the county was not required to make reasonable efforts to reunite appellant with the children is clearly erroneous on two grounds. First, appellant argues that the county had a continuing duty to provide such reasonable efforts because the district court's April 2001 written order (which arose out of a February 2001 hearing relating to the CHIPS proceeding) required the county to "submit a case plan for court approval outlining appropriate and available services to be offered to the father and the children" and to address the "conditions that the father must mitigate in order for the children to be in his day-to-day care." Second, appellant argues that the general provisions of the Juvenile Court Act, Minn.Stat. ch. 260 (2002), clearly require the district court to determine before the final termination order that the county need not provide appellant with such reasonable efforts.

## CHIPS proceeding

After a child has been alleged to be in need of protection or services, the county must provide reasonable efforts to prevent placement and reunite the family. Minn. Stat. § 260.012(a). Reasonable efforts means that the county must exercise due diligence to "use appropriate and available services to meet the needs of the child and the child's family * * * to eliminate the need for removal and reunite the family." Minn.Stat. § 260.012(b). In determining whether reasonable efforts were made, "the child's health and safety must be of paramount concern." Minn.Stat. § 260.012(a). In certain instances, however, the county need not provide reasonable efforts for "rehabilitation and reunification" if the court determines that

> a termination of parental rights petition or other petition according to section 260C.201, subdivision 11, has been filed alleging a prima facie case that the provision of services or further services for the purpose of reunification is futile and therefore unreasonable under the circumstances.

Minn.Stat. § 260.012(a)(3).

After the district court adjudged the children to be in need of protective services, the county implemented individual case plans for each child. The focus of these case plans in the CHIPS proceeding was to provide the children with permanency and a custody change in light of appellant's lengthy incarceration for murdering his wife, making it impossible to reunite the children with appellant in the foreseeable future. In each child's case plan, the county stated that efforts to reunify the child with appellant would be futile because of appellant's lengthy incarceration. Thus, the county focused instead on providing services for the children to address their emotional and physical needs. Because of the clear futility of returning the children to appellant's day-to-day care, the county was not required to provide appellant with a case plan or services for the purpose of reunification.

## Termination-of-parental-rights proceeding

The county also determined that it would be in the children's best interests to terminate appellant's parental rights. A county caseworker testified that the termi-

nation-of-parental-rights petition was filed because of appellant's lengthy incarceration and his inappropriate conduct.

In termination-of-parental-rights proceedings under section 260C.301, the district court generally must make findings and conclusions as to the reasonable efforts exercised by the responsible social-services agency "to rehabilitate the parent and reunite the family." Minn.Stat. §§ 260C.301, subd. 8(1), 260.012(c) (2002). In the alternative, the district court may determine that reasonable efforts for "rehabilitation and reunification" are not required in a proceeding to terminate parental rights if the petition to terminate parental rights alleges a prima facie case that the provision of services for the purpose of "reunification" is futile and therefore unreasonable under the circumstances. Minn.Stat. §§ 260C.301, subd. 8(2), 260.012(a)(3), (c). The statute is silent as to when during termination-of-parental-rights proceedings the district court must determine that reasonable efforts would have been futile and therefore unreasonable.

█ In the order terminating appellant's parental rights, the district court found that the county was not required to offer appellant a case plan because the termination-of-parental-rights petition states a prima facie case that the provision of services for reunification would be futile and therefore unreasonable. The court found that appellant's incarceration until the children's adulthood would make reunification impossible and that the provision of any services for rehabilitation was futile and therefore unreasonable under the circumstances. Although a parent's incarceration alone is not enough to warrant a termination of parental rights, "the court may also consider that fact with the other evidence offered in support of the petition for termination." *In re Welfare of A.Y.-J.,*

558 N.W.2d 757, 761 (Minn.App.1997) (citation omitted), *review denied* (Minn. Apr. 15, 1997). The district court's order also focused on the children's best interests. The court determined that, in light of appellant's lengthy incarceration for murdering the children's mother, his inappropriate communications with his oldest child, and his conduct while incarcerated, terminating appellant's parental rights under the current circumstances would provide the best permanency option for all four children.

This court has previously held that the failure to provide a case plan and the county's lack of effort to reunite a parent with his child, where the incarcerated parent was in prison for battering the child, was "excusable under the circumstances." *In re Welfare of Udstuen,* 349 N.W.2d 300, 304 (Minn.App.1984). We hold now that when the futility of reunification efforts is irrefutable, as here where the father will be incarcerated until his children's adulthood and efforts at rehabilitation would be futile, the county need not provide the parent with a case plan.

**II**

Appellant also argues that the district court's findings are insufficient to support termination of his parental rights.

█ A district court may terminate parental rights only for grave and weighty reasons. *In re Welfare of M.D.O.,* 462 N.W.2d 370, 375 (Minn.1990). If one or more of nine statutory criteria support termination, the district court may terminate an individual's parental rights. Minn. Stat. § 260C.301, subd. 1(b). But the district court must make clear and specific findings that "conform to the statutory requirements for termination adjudications." *In re Welfare of Chosa,* 290 N.W.2d 766, 769 (Minn.1980) (citation omitted).

The purpose of the laws relating to termination of parental rights is to ensure that

(1) when required and appropriate, reasonable efforts have been made by the social services agency to reunite the child with the child's parents in a home that is safe and permanent; and

(2) if placement with the parents is not reasonably foreseeable, to secure for the child a safe and permanent placement, preferably with adoptive parents or a fit and willing relative through transfer of permanent legal and physical custody to that relative.

Minn.Stat. § 260C.001, subd. 3 (2002). "The paramount consideration in all proceedings for the termination of parental rights is the best interests of the child." *Id.* And the child-protection provisions of the statutes shall be liberally construed to carry out the stated purpose. *Id.*, subd. 4 (2002).

In this case, the district court concluded that clear and convincing evidence supported termination of appellant's parental rights on six statutory grounds: (1) appellant abandoned his children, Minn.Stat. § 260C.301, subd. 1(b)(1); (2) appellant failed to comply with his parental duties, Minn.Stat. § 260C.301, subd. 1(b)(2); (3) appellant is palpably unfit, Minn.Stat. § 260C.301, subd. 1(b)(4); (4) that after the children's placement out of the home, reasonable efforts, under the court's direction, have failed to correct the conditions leading to the children's placement, Minn.Stat. § 260C.301, subd. 1(b)(5); (5) appellant has not registered with the adoption registry, Minn.Stat. § 260C.301, subd. 1(b)(7); and (6) the children were neglected and in foster care, Minn.Stat. § 260C.301, subd. 1(b)(8).

*Abandonment*

The Juvenile Court Act defines two situations where abandonment is presumed. Minn.Stat. § 260C.301, subd. 2(a). These presumptions do not exist here. But the statute does not preclude the court from finding abandonment in the absence of these presumptions. *Id.*

Appellant argues that the only finding the court made that would pertain to the statutory provision terminating parental rights for abandonment was that appellant was in prison. *See* Minn.Stat. § 260C.301, subd. 1(b)(1). Under Minnesota caselaw, imprisonment alone is not sufficient to constitute abandonment. *In re Staat,* 287 Minn. 501, 506, 178 N.W.2d 709, 713 (1970). But imprisonment combined with other factors, such as parental neglect and withholding parental affection, can support a finding that a parent has abandoned his child. *Id.*

In this case, appellant has a history of violence and domestic abuse; he murdered his children's mother; he has been in frequent lock-down in prison for his behavior; he has threatened members of the maternal family; and he continues to have inappropriate communications with his oldest child. The district court made findings regarding appellant's violent history and current behavior. Accordingly, the court's findings support the conclusion to terminate appellant's parental rights for abandonment.

*Failure to comply with his parental duties*

The district court can terminate parental rights if a parent has substantially, continuously, or repeatedly refused or neglected to comply with the duties imposed on him by the parent-and-child relationship and either reasonable efforts have failed to correct the conditions or reasonable efforts would be futile and unreasonable. Minn.Stat. § 260C.301, subd. 1(b)(2).

The district court found that appellant failed to comply with his parental duties when he murdered his wife (the children's

mother) and then did not allow the children to attend their mother's funeral. The court found that reasonable efforts would be futile and unreasonable. We agree.

*Palpably unfit*

■ Termination of parental rights can occur if a parent is found to be palpably unfit. Minn.Stat. § 260C.301, subd. 1(b)(4). The district court found that appellant was palpably unfit to parent the children because he will be incarcerated until the children are adults and because he cannot provide care for the children in the reasonably foreseeable future. Appellant argues that the mere fact that appellant is in prison does not mean he is palpably unfit to be a parent and does not warrant termination of his parental rights.

■ If a parent's behavior is likely to be detrimental to the children's physical or mental health or morals, the parent can be found palpably unfit and have his parental rights terminated. *In re Welfare of H.M.P.W.*, 281 N.W.2d 188, 191 (Minn. 1979). In this case, the district court made findings relating to appellant's conduct. The court made extensive findings regarding appellant's murder conviction, inappropriate communication with his children while in prison, and threats to maternal family members and friends who were interested in the children's welfare. The record supports the court's findings and details other reasons why appellant's conduct has been detrimental to the children's well-being and sense of permanency. Termination under this statutory factor is appropriate and is supported by the evidence.

*Reasonable efforts*

Termination can also occur if, after the children's placement out of the home, reasonable efforts, under the court's direction, have failed to correct the conditions leading to the children's placement. Minn.Stat.

§ 260C.301, subd. 1(b)(5). The district court found that, because reasonable efforts for reunification would be futile, the county was relieved of its obligation to make such reasonable efforts.

We have already addressed the issue of whether the county was required to provide reasonable efforts for reunification and have concluded that, where the futility of reunification efforts is irrefutable, a case plan is unnecessary. Accordingly, the district court did not err in concluding that termination was appropriate under this statutory provision.

*Adoption registry*

Parental rights can be terminated if the alleged father was not married to the mother when the children were born and did not subsequently register with an adoption agency. Minn.Stat. § 260C.301, subd. 1(b)(7).

Here, the district court found that appellant had not taken steps to become the legally adjudicated father of the four children. But appellant and the children's mother married after the birth of her second child. Appellant is therefore the presumed father of the two younger children and the alleged father of the two older children. There is nothing in the record to indicate that he took formal action to become the legally adjudicated father of the older two children or that he registered with an adoption agency as father of the two older children. Accordingly, it appears that the court properly terminated appellant's rights under subdivision 1(b)(7) as to the two older children, but not as to the two younger children.

*Neglected and in foster care*

■ Parental rights can also be terminated if the child is neglected and in foster care. Minn.Stat. § 260C.301, subd. 1(b)(8). Under the general definitions of

the child-protection provisions of the Juvenile Court Act as used in chapter 260C,

"[n]eglected and in foster care" means a child

(a) Who has been placed in foster care by court order; and

(b) Whose parents' circumstances, condition, or conduct are such that the child cannot be returned to them; and

(c) Whose parents, despite the availability of needed rehabilitative services, have failed to make reasonable efforts to adjust their circumstances, condition or conduct, or have willfully failed to meet reasonable expectations with regard to visiting the child or providing financial support for the child.

Minn.Stat. § 260C.007, subd. 24 (2002). The district court shall consider a non-exclusive list of factors to determine whether a child is in neglected and in foster care:

(1) the length of time the child has been in foster care;

(2) the effort the parent has made to adjust circumstances, conduct, or conditions that necessitates the removal of the child to make it in the child's best interest to be returned to the parent's home in the foreseeable future, including the use of rehabilitative services offered to the parent;

(3) whether the parent has visited the child within the three months preceding the filing of the petition, unless extreme financial or physical hardship or treatment for mental disability or chemical dependency or other good cause prevented the parent from visiting the child or it was not in the best interests of the child to be visited by the parent;

(4) the maintenance of regular contact or communication with the agency or person temporarily responsible for the child;

(5) the appropriateness and adequacy of services provided or offered to the parent to facilitate a reunion;

(6) whether additional services would be likely to bring about lasting parental adjustment enabling a return of the child to the parent within an ascertainable period of time, whether the services have been offered to the parent, or, if services were not offered, the reasons they were not offered; and

(7) the nature of the efforts made by the responsible social services agency to rehabilitate and reunite the family and whether the efforts were reasonable.

Minn.Stat. § 260C.163, subd. 9 (2002).

The district court made extensive findings on each of these factors. In addressing the factors, the court found that the children had already been in foster care for 19 months; rehabilitative services would have been futile and a return of the children to appellant would not occur in the foreseeable future because of appellant's incarceration; although there has been no physical visitation, appellant's telephone and written communications have been inappropriate; appellant's own conduct in prison caused him to be placed in solitary confinement during the majority of his incarceration, so that his own behavior limited the amount of contact he could have even with the county; the county was relieved of any obligation to provide reunification services; and additional services would not facilitate returning appellant's children to his daily care.

Appellant again argues that termination is not warranted under this statutory factor because the county failed to provide appellant with reasonable efforts for reunification. Because reasonable efforts for reunification would have been futile and the lack of a case plan for appellant was excusable, termination under this factor is appropriate.

We note that, although the statute requires only one statutory reason to terminate, the district court order to terminate appellant's parental rights could be affirmed on any one or more of the above statutory grounds.

## DECISION

The district court's finding that the county was not required to provide appellant with a case plan because it would be futile and therefore unreasonable is not erroneous because the futility of reunification efforts is irrefutable. Because the findings are supported by the record and provide solid reasons for terminating appellant's parental rights, we conclude that the district court did not err.

**Affirmed.**