The State of North Dakota *ex rel.* E. O. Faussett, Plaintiff
and Respondent, *v.* Thomas J. Harris, as County Auditor
of Ransom County, North Dakota, and L. B. Chamberlain,
W. H. White, F. A. Blood, T. J. Walker, and James K.
Banks, as Board of County Commissioners of Ransom
County, North Dakota, Defendants and Appellants.

**1.  Office of County Assessor Abolished — Office of District
Assessor Created.**

Section 30 of the revenue law, approved March 11, 1890, abolished
the office of county assessor, and created the new office of district as-
sessor the instant the statute took effect.

**2.  Same; Same; Commissioners May Fill Vacancy Existing
Prior to Election.**

The vacancy in said office which the county commissioners are au-
thorized to fill by section 30 is the vacancy existing before the election
of any officer to fill the office, as well as a vacancy created after the of-
fice has once been filled.

**3.  Office Not Established by Constitution May be Abolished
at any Time.**

Section 10 of the schedule to the constitution, providing that "the
county and precinct officers shall hold their offices for the term for
which they were elected," does not prohibit the legislature from abol-
ishing the office of county assessor before the expiration of the term of
the county assessor in office when the constitution took effect, the
same being a legislative office.

(Opinion Filed May 13, 1890.)

*A*PPEAL from district court, Ransom county; Hon. W. S.
Lauder, Judge.

Writ of *mandamus* granted the plaintiff, and defendant ap-
peals.

Geo. F. Goodwin, attorney general, for appellants, argued: That
the revenue law of 1890 abolished the office of county assessor;
created the office of district assessor; as soon as the act went
into effect there was a vacancy in the office of district assessor,
which could be filled by appointment: Mechem on Public Of-
ficers, § 132; Driscoll v. Jones, 44 N. W. Rep. 726; People v.
Fisher, 24 Wend. 219, and that the revenue law was not in this

particular in conflict with section 10 of the schedule of the state constitution: State v. Telbord, 1 Nev. 240; State, *ex rel* v. Ransom, 70 Mo. 78; State v. McGovney, 92 Mo. 428.

L. W. Gammons, with whom were Austin & Harper, for respondent, cited: 9 How. 242; 44 N. W. 726; 11 Wend. 132; 12 Cal. 378; 5 Kan. 426; 6 Cow. 643; 9 id. 640; 2 Denio, 281; 11 Wend. 151; Broom, Legal Maxims, 414. "An elective office which has never been filled cannot be vacant:" 91 N. Y. 634; 7 Pac. Rep. 261.

CORLISS, C. J. A peremptory writ of *mandamus* having been awarded the relator in the trial court, defendants bring the case before this court by appeal. Relator was county assessor of Ransom county at the time of the adoption of the constitution of this state. His term of office as fixed by the territorial laws would not expire until January, 1891. On the 18th day of April, 1890, the board of county commissioners of Ransom county, claiming to act under the provisions of § 30, of the revenue law, approved March 11, 1890, appointed district assessors for each of the five commissioner districts of that county; and these appointees were about to enter upon the duties of their office when these proceedings were instituted to compel the county auditor and board of county commissioners to furnish relator the necessary books, blanks, etc., to make assessment of property in the county, they having refused to so supply him on proper demand. They seem to justify their refusal on the ground that by the revenue law the office of county assessor was abolished, and that, since the appointment by the board of an assessessor for each of the commissioner districts of the county, these assessors are the only officers having any authority under the law to make the assessment that was formerly made by the county assessor. Relator first claims that the revenue law did not contemplate the appointment of any assessor under its provisions before the expiration of his term of office. But was there any such office left to fill after the enactment of this statute? Section 30 of that act provides for the office of district assessor. All counties and parts of counties, not organized into civil townships, are to be divided into assessor districts, which

shall be the same as the commissioner districts of the several counties. It was over the territory of the different counties not embraced in any organized civil township that the jurisdiction of the county assessor extended. It swept over all such territory within the county. But under § 30 of the revenue law the same territory is subdivided and placed under the jurisdiction of several assessors, each officer having a separate district, whose boundaries coincide with those of a particular commissioner district. It is therefore obvious that the two offices cannot co-exist. There cannot be two officers each having authority to assess the same property as the basis of the same tax. One officer might be authorized to assess for one tax, and another for a different tax. But the assessment of the county assessor, and the assessment of the district assessor are each the basis of all taxes, and therefore of the same taxes. In cases of difference as to values, and there would be many such cases, which assessment would control? Which would be the valid assessment? Would each be valid in part, and, if so, what part?

These inquiries show into what inextricable confusion the collection of the public revenue would be thrown should it be decided that these two necessarily inconsistent offices could co-exist. The office of district assessor, created by the revenue law, displaces the office of county assessor, because the two cannot stand together. But it is said that this portion of the revenue law was not to take effect until after the expiration of the term of office of the county assessors in office when the state was admitted into the Union. By an emergency clause, the act went into operation upon its approval. There is nothing in the language of the act to indicate that the provision relating to the office of district assessor should be held in abeyance until the expiration of the term of office of the county assessors. The act in its full scope became a law upon its approval. It was true that, a new office having been created, no district assessor could have been placed in the office to exercise its functions until after the fall election, had not the statute in express terms provided that boards of county commissioners might by appointment fill any vacancy in the office. We are here met by the ar-

gument on the part of the relator that this refers only to such a vacancy as may exist after the office has been once filled by election; and in this connection we are referred to § 1385 of the Compiled Laws, which enumerates the events which cause vacancies in the office, and it is urged that this section is a legislative definition of the word "vacancy," and that the legislature must be presumed to have used it in the sense of this definition when they employed it in the revenue law. How it can be said that that section is a definition of the word it is difficult to understand. Its full scope is the statement of causes which will create vacancy. It does not purport to exclude all other causes. Certainly, the legislature may provide that a vacancy in fact shall, in contemplation of law, be a vacancy to be filled in a manner prescribed. While we hold in mind the statute enumerating the cases in which a vacancy may exist, we must not lose sight of the fact that the legislature intended, as is shown by the emergency clause, that the revenue law should take effect in time to make it possible for the tax proceedings for 1890 to be initiated under its provisions. They intended that all of its machinery should go into immediate operation; that the assessors whose offices it created should make the assessment under it for this year. It was with this design before them that they provided for the filling of the vacancy in that office, knowing that if the district assessor was to make the assessment there would be a vacancy in the office until it could be filled by election in the fall. It was such a vacancy, as well as the vacancy which might after election be created under the statute, that the legislature referred to when they declared that any vacancy might be filled by the county commissioners. This interpretation respects the will of the legislature, evinced by the emergency clause, that the new system should go into effect in time to permit all the tax proceedings for 1890, from the first steps of assessment, to be taken under that act; and it would be a strained construction to hold that the initiation of the tax proceedings under that system was to be left to an officer acting under the old system, when by prescribing the manner of filling a vacancy the legislature had made it possible to fill the new office it had thus created in time for the officers so appointed to

make the assessment this year. The decision in Driscoll v. Jones, (S. Dak.) 44 N. W. Rep. 726, places the same interpretation on the word "vacancy" under very similar facts, and under the same statute relied upon by relator to support his contention. See, also, Walsh v. Com., 89 Pa. St. 419; State v. Boone Co., 50 Mo. 317; Stocking v. State., 7 Ind. 329; State v. Irwin, 5 Nev. 111; and concurring opinion of Thornton, J., in Rosborough v. Boardman, 67 Cal. 116, 7 Pac. Rep. 261.

But it is further insisted by relator that section 10 of the schedule has made the office of county assessor a constitutional office, and has therefore placed the office beyond the power of the legislature during the balance of his term. The portion of the section material to this point provides that, notwithstanding the adoption of the constitution, "the county and precinct officers shall hold their offices for the term for which they were elected." It will be observed that this declares no settled policy of the state with reference to these offices. It does not purport to regulate permanently the term of any office, or permanently place that term of the office itself beyond the control of the legislature. The office is not imbedded in the constitution, as is the case with respect to the offices named in section 173 of the constitution. These are constitutional offices. The other offices, including that of county assessor, are offices which, under the express provisions of section 173, the legislature may abolish by creating other offices to take their place. "The legislative assembly shall provide by law for such other county, township, and district officers as may be deemed necessary," etc. The most that can be claimed, and, in fact, all that is claimed, by relator, is not that the office or term of office is permanently removed from legislative interference, but that the sovereign people have hedged about with constitutional protection these particular persons holding the office of county assessor at the time we attained the dignity of self-government. Sovereign states are not wont to protect particular persons from removal from office by the legislature during their term of office, and yet leave the office and the right of future incumbents entirely to the control of the law-making power. Unless the office is permanently removed from legislative control—unless all incumbents are to be

protected—it cannot be inferred that it was the will of the people to single out the first incumbent, and save him alone from removal. Finding, as we do, that the office of county assessor may be abolished at any time after the expiration of the term of the incumbent in office at the time of statehood, we cannot assent to the view that section 10 of the schedule has placed the office beyond the power of the legislature for the balance of the unexpired term when the constitution took effect. The case of State v. Tilford, 1 Nev. 240, is directly in point. The question there presented was as to the continuance in office of the members of the board of education for Storey county, whose term of office had not expired when the state of Nevada came into the Union. The legislature had abolished the office by conferring all the powers of that board upon other officers. But it was urged, as in the case before this court, that the office was, for the unexpired term, placed by the constitution beyond the reach of the legislature, the constitution providing as follows: "All county officers under the laws of the territory of Nevada, at the time when the constitution shall take effect, * * * shall continue in office until the first Monday of January, A. D. 1867, and until their successors are elected and qualified." Const. Nev. art. 17, § 13. The court said: "It may be contended that, as the constitution retains all county officers in office until 1867, it amounts to a prohibition on the legislature from abolishing any county office which was in existence when the constitution was adopted, before January, 1867. A sufficient answer to that proposition is that the constitution provides in section 25 of article 4 that 'the legislature shall establish a system of county and township government, which shall be uniform throughout the state.'"

Reasoning upon the same line, we say that the constitution has, in express terms, vested in the legislature the power and made it their duty to provide by law for such other county officers than those named in section 173 (and county assessors are not therein named) as may be deemed necessary; and section 10 is to be read with the qualification that the officer shall hold the office subject to the power of the legislature to abolish the office. It was the thirteenth section of the seventeenth

article of the Nevada constitution which it was insisted continued the members of the board of education in office against the act of the legislature which destroyed their office. Said the court: "We hold that the general language of the thirteenth section of the seventeenth article is subject to this modification: that it provides for the continuance in office of all county officers whose offices may not be legally abolished before the first Monday of January, 1867." We hold that all provisions of the revenue law went into operation at the same time, i. e., March 11, 1890; that that law abolished the office of county assessor by creating the new office of district assessor; that there was a vacancy in that office, within the meaning of the law, at the time the board of county commissioners of Ransom county made the appointment of district assessors; that the assessment must be made by the district assessor, and not by the relator, as the office of county assessor has been destroyed, and he is consequently no longer a public officer. He cannot hold and exercise the functions of an office that has ceased to exist. The order and judgment appealed from are reversed. All concur.