In the Matter of the WELFARE
OF A.Y.–J., Child.

No. C2–96–1682.

Court of Appeals of Minnesota.

Feb. 4, 1997.

Review Denied April 15, 1997.

**758**

John M. Stuart, State Public Defender, Charlann Winking, Assistant Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Attorney General, St. Paul, for respondent.

Kathy Keena, Lyon County Attorney, Marshall, for respondent.

Considered and decided by PETERSON, P.J., and PARKER and WILLIS, JJ.

## OPINION

PARKER, Judge.

Appellant Andre Jones challenges the termination of his parental rights to his son, A.Y.–J. Specifically, appellant contends the district court's decision to proceed with the termination hearing in his absence denied him due process of law. He also contends the district court erred in making its findings of fact and conclusions of law based on the evidence presented. Because the district court's proceeding did not deny appellant due process of law and because the district court did not err in making its findings of fact and conclusions of law, we affirm.

## FACTS

A.Y.–J was born in July 1994 to appellant Andre Jones. Appellant and the child's mother never married, and she did not identify the baby's father on the birth certificate. The mother suffered a fatal seizure in November 1994, and Lyon County took the child into temporary custody. The county filed a petition alleging the child to be in need of protection or services. Despite appellant's appearance at the hearing, the district court found the "child in need of protection or services based on the death of the birth mother and having no paternity established." The court ordered paternity testing, placed the child in foster care, and ordered appellant to obtain chemical dependency and psychological evaluations.

Appellant visited the child each day from November 14 to November 22, 1994, at the temporary foster home and/or a daycare facility. Luci Kovash, appellant's social worker, prepared a case plan that recommended he visit the child two times per week. Kovash reviewed the plan with appellant by telephone on November 21, 1994. On November 22 appellant moved from Marshall to the Twin Cities without informing Kovash. The court found that appellant returned to Marshall and visited the child three times in December 1994. Those were appellant's last contacts with the child.

Under the terms of the case plan and the court order, appellant was to obtain a chemical dependency evaluation, but he never completed that evaluation. Kovash also provided appellant with the name and number of an African–American psychologist, but he did not follow through on the requirement. Appellant took the blood test, and all parties admit that he is A.Y.–J.'s birth father.

On January 27, 1995, the court conducted a review hearing. Appellant did not appear personally, but he was represented by counsel. Appellant had not completed the chemical dependency or psychological evaluations. The court issued an order requiring him to make arrangements to do so and to comply

with the case plan. Appellant did not complete these requirements.

Kovash testified that she had a telephone conversation with appellant on January 9, 1995, and that she received a voice mail from him on January 23, 1995. On February 28, 1995, Kovash reviewed the case plan and attempted to contact appellant. Although she did not have an address for him, she called the only number she had several times. She could not reach him. In March 1995, Kovash spoke with appellant's roommate in Minneapolis and learned that appellant no longer resided there. In April 1995, Kovash contacted appellant's aunt, but she did not know where appellant was.

On May 11, 1995, the district court conducted another review hearing. Appellant did not appear personally, but he was represented by counsel. On June 3, 1995, he was arrested on bank robbery charges. He pled guilty and received a sentence of 151 months, as a career offender. He is currently serving that sentence in federal prison in Kansas.

On May 9, 1995, the county filed a petition to terminate his parental rights. The district court conducted the initial appearance on July 18, 1995. A writ of habeas corpus was obtained by appellant's counsel to secure his appearance from the Anoka jail, but appellant refused to attend the hearing. The original hearing was set for September 20, 1995. Both sides requested continuances, and the matter eventually was re-set for April 1, 1996.

Appellant's counsel obtained a writ of habeas on March 26, 1996. The federal prison refused to release him for the purpose of appearing in this matter. On the morning of the hearing, appellant's counsel moved for a continuance based on the fact that his client could not appear. The court denied the motion and conducted the first day of the hearing. However, the court allowed appellant a few weeks to arrange other means of providing testimony before completing the case. Both counsel traveled to the federal prison, and appellant gave his deposition testimony.

On June 4, 1996, the district court reconvened the parental termination proceeding. Appellant's counsel offered the deposition testimony and rested the case. The court issued an order terminating appellant's parental rights, and this appeal followed.

## ISSUES

I. Did the district court deprive appellant of due process of law by proceedings with the parental termination hearing without appellant's presence?

II. Did the district court err in making findings of fact and conclusions of law to order the termination of appellant's parental rights under Minn.Stat. §§ 260.221, subd. 1(b)(1), (5)?

## DISCUSSION

### I.

Appellant contends the district court denied him due process of law because he was not physically present at the hearing which terminated his parental rights. Appellant acknowledges that counsel appeared on his behalf and admits that the district court allowed him the opportunity to submit testimony by deposition. Appellant argues, however, that his physical absence from the hearing due to his incarceration prevented a fair presentation of his case.

Parents have a substantial and fundamental right to the custody and companionship of their children, and those rights should not be taken away except for grave and weighty reasons. *In re Welfare of H.G.B*, 306 N.W.2d 821 (Minn.1981). However, due process does not compel the physical attendance of a parent at termination proceedings. *Id.* at 822.

In *H.G.B.*, Ramsey County sought to terminate the parental rights of a mother who could not attend the hearing because she was incarcerated. *Id.* The supreme court stated that the amount of process due in such proceedings varies with the circumstances of the case and it involves a balancing of interests. *Id.* at 825. Due process with regard to parental termination considers both the interests of the parents and the best interests of the child, but does not necessarily mean that those interests are weighed equally. *Id.* at 826. The court applied the balancing analysis and determined that the mother's due

process rights in *H.G.B.* had not been violated. *Id.* at 822. She had been represented by counsel during the termination proceedings and could have submitted depositions or interrogatories, but failed to do so. *Id.* at 825–26.

While *H.G.B.* did not create an absolute rule for allowing termination proceedings without the physical presence of a parent, the facts of the instant case indicate that appellant's interests were balanced with the process provided and appellant's presence was not necessary. Counsel represented appellant during the proceedings. Upon learning that appellant would not be physically present, the district court allowed appellant the opportunity to present deposition testimony on the matter at a later date. This also allowed appellant the opportunity to rebut the county's witnesses. Counsel for both parties went to the prison in Kansas and took a deposition.

Appellant contends that his inability to present live testimony prejudiced his case with regard to the issue of abandonment. Clearly, a credibility assessment is important in parental termination cases. *See In re Welfare of M.D.O.,* 462 N.W.2d 370, 374–75 (Minn.1990) (appellate court deferred to trial court's assessment of witnesses in evaluating what is in best interests of child during a termination proceeding). However, the district court had appellant's 59–page deposition, as well as other information in the record, with which to make a determination.

Appellant also argues that had he been present and available to consult his attorney, "perhaps even more evidence could have been developed on his behalf." Appellant's argument is speculative and provides no specific examples of other evidence he might have presented that could have changed the outcome of this case. Further, appellant had several weeks after the county's presentation to prepare for his deposition testimony and refute the county's assertions.

Neither of these reasons demonstrates a denial of due process. The district court's procedure in this case appears adequate to have protected appellant's interests while also looking to the child's interests. *See In re Welfare of S.R.A.,* 527 N.W.2d 835, 839 (Minn.App.1995) (children's best interests

and their right to be raised in a secure home outweighed technical violation of parent's right to due process), *review denied* (Minn. Mar. 29, 1995); *see also In re Welfare of J.W.,* 391 N.W.2d 791, 795 (Minn.1986) (child's interests in establishing parentage prevailed over father's right to hearing on the merits).

■ Appellant also suggests that the district court abused discretion in refusing to grant his request for a continuance. *See Dunshee v. Douglas,* 255 N.W.2d 42, 45 (Minn.1977) ("granting of a continuance is a matter within the discretion of the trial court and its ruling will not be reversed absent a showing of clear abuse of discretion"). Despite the fact that a writ of habeas corpus had been issued to secure his release from the county jail, appellant refused to appear at the initial hearing for the termination. Appellant also failed to appear personally at two of the review hearings for the protection order. Thus, the court had no assurance that appellant would even appear if his release were granted for the final hearing.

Further, the court received information indicating that the release process at the federal prison takes approximately two weeks, and such requests are not generally granted for civil trials. The termination proceedings had already been continued for many months. Appellant will not be released for several years. In light of this record, the district court did not abuse discretion in deciding to proceed with the case on the date set.

## II.

■ On review of an order terminating parental rights, an appellate court determines whether the district court's findings address the statutory criteria, are supported by substantial evidence, and whether they are clearly erroneous. *In re Welfare of M.D.O.,* 462 N.W.2d 370, 375 (Minn.1990). In a termination proceeding, the petitioner has the burden of proving, by clear and convincing evidence, that there is a statutory ground for termination. *In re Welfare of Rosenbloom,* 266 N.W.2d 888, 889–90 (Minn. 1978).

## A. Minn.Stat. § 260.221, subd. 1(b)(1)

A court may terminate the rights of a parent to a child if it finds that the parent has abandoned the child. Minn.Stat. § 260.221, subd. 1(b)(1) (1996). Abandonment is presumed when:

(i) the parent has had no contact with the child on a regular basis and no demonstrated, consistent interest in the child's well-being for six months; and

(ii) the social service agency has made reasonable efforts to facilitate contact, unless the parent establishes that an extreme financial or physical hardship or treatment for mental disability or chemical dependency or other good cause prevented the parent from making contact with the child.

Minn.Stat. § 260.221, subd. 1(b)(1)(i)-(ii) (1996).

■ The district court found that appellant abandoned A.Y.–J. "within the meaning of Minn.Stat. § 260.221(b)(1)." Appellant admits that his contact with his son was extremely limited from January 1995 until his arrest in June 1995. The district court found that appellant visited the child several times for the first few days immediately following the death of the child's mother, but he visited the child only three times during December 1994 and has not visited the child since that time. Appellant also failed to attend three hearings related to this matter. Another finding indicates that appellant made occasional telephone calls and sent one card, three letters, and some books to the child or the foster parents during 1995. However, these are the only contacts mentioned for the entire period from November 1994 to June 4, 1996.

Appellant clearly did not have contact with the child on a "regular basis," and his actions for that period do not "demonstrate a consistent interest in the child's well-being" as required by the statute. Thus, the district court could properly conclude that respondent met the first prong of the presumption.

Appellant also contends that the county failed to make reasonable efforts to facilitate contact and that he established good reasons which prevented contact. While the district court's findings are not explicit on this issue, the court recognized active attempts by the social worker to facilitate rehabilitation and

contact, and the findings made on reunification efforts by the county were adequate to allow appellate review. The social worker attempted to contact appellant several times to arrange visits and to assist with the case plan. Appellant failed to maintain contact with the social worker and failed to advise her of address changes. The social worker attempted to call appellant in Minneapolis and learned from his roommate that appellant had moved (without notifying the county). The social worker also attempted to contact appellant by phoning a relative, who was unable to be of help.

■ Appellant provides a series of reasons for failing to make contact: emotional problems, lack of financial resources, chemical abuse, and lack of transportation. The district court did not recognize these as legitimate excuses for appellant's failure to demonstrate consistent contact with his son. Appellant claims lack of financial resources prevented any form of contact, but the record indicates that he secured a job in Minneapolis during this period. Further, even if chemical abuse could satisfy the "other good cause" requirement of the statute, appellant was able to maintain employment during this period and admits that he took no steps toward seeking recovery assistance. While appellant's incarceration alone is not enough to warrant a termination of parental rights, the court may also consider that fact with the other evidence offered in support of the petition for termination. *See In re the Welfare of Udstuen,* 349 N.W.2d 300 (Minn.App. 1984) (allowing consideration of fact of incarceration for parental rights termination). Because the county made reasonable efforts to facilitate contact and appellant did not establish an excuse for failing to take efforts to contact his child, the statutory presumption applies. We see no clear error in concluding that, under the terms of the statute, appellant abandoned his child.

## B. Minn.Stat. § 260.221, subd. 1(b)(5)

A court may also terminate the rights of a parent to a child if it finds that after a determination of a child's need for protection or services, "reasonable efforts, under the direction of the court, have failed to correct

the conditions leading to the determination." Minn.Stat. § 260.221, subd. 1(b)(5) (1996).

Appellant next contends that the district court erred in concluding that his rights should be terminated for failure to correct the conditions leading to the determination of the child's need. The order stated that the court made its decision because the child's birth mother died and no paternity had been established. Because he submitted to the blood testing and the parties agree that he is the child's biological father, appellant contends that he cured the conditions leading to the determination of the child's need for protection or services. However, the order also directs appellant to complete chemical dependency and psychological evaluations, which indicated that these items were included in the court's determination.

While appellant admits that he did not comply with the terms of the order's requirements, he contends that failure is not a specific statutory basis for termination. It is presumed that reasonable efforts have failed, upon a showing that

(i) the parent has been diagnosed as chemically dependent by a professional certified to make the diagnosis;

(ii) the parent has been required by a case plan to participate in a chemical dependency treatment program;

(iii) the treatment programs offered to the parent were culturally, linguistically, and clinically appropriate;

(iv) the parent has either failed two or more times to successfully complete a treatment program or has refused at two or more separate meetings with a caseworker to participate in a treatment program; and

(v) the parent continues to abuse chemicals.

Minn.Stat. § 260.221, subd. 1(b)(5)(i)-(v) (1996).

Although appellant has not been professionally diagnosed, he openly admitted chemical dependency and used it as an excuse for failing to contact his child. The court may rely on these admissions when applying the statutory presumption. Because appellant failed to take steps toward treating his problems, or even contacting a professional after having been provided names and numbers, the court could conclude that reasonable efforts failed, either under this presumption or otherwise.

Moreover, Minn.Stat. § 260.221, subd. 1(b)(5), also allows a presumption that reasonable efforts have failed if

(i) a child under the age of 12 has resided out of the parental home under court order for more than one year following an adjudication of dependency, neglect, need for protection or services * * *;

(ii) conditions leading to the determination will not be corrected within the reasonably foreseeable future. It is presumed that conditions leading to a child's out-of-home placement will not be corrected in the reasonably foreseeable future upon a showing that the parent or parents have not substantially complied with the court's orders and a reasonable case plan, and the conditions which led to the out-of-home placement have not been corrected; and

(iii) reasonable efforts have been made by the social service agency to rehabilitate the parent and reunite the family.

The child was out of the home for more than a year by the time the district court first conducted the hearing in April 1996. The record indicates that appellant refused to address his chemical dependency or his lack of involvement in the child's life, and the county made reasonable efforts to rehabilitate and reunite the family. It does not appear that the situation will be corrected, particularly because appellant is now incarcerated for 12 years.

## DECISION

We affirm the district court's decision to terminate appellant's parental rights under Minn.Stat. § 260.221, subd. 1(b)(1), (5).

**Affirmed.**