1998 ND 122

STATE of North Dakota and Heidi Heitkamp, Attorney General for the State of North Dakota, Bismarck State College, Department of Human Services, Department of Transportation, Job Service North Dakota, North Dakota State University, North Dakota State University–Bottineau, University of North Dakota, University of North Dakota–Lake Region, Jon M. Arntson, Arntson & Stewart, P.C., Steven C. Lian, Farhart, Lian & Maxson, P.C. (formerly Farhart, Lian, Maxson, Louser & Zent, P.C.), Daniel A. Speights, Amanda Graham Steinmeyer, Robert N. Hill and Speights & Runyan, Petitioners,

v.

The Honorable Gail HAGERTY, Judge of District Court, South Central Judicial District, and W.R. Grace & Co.–Conn., Respondents.

Civil No. 980039.

Supreme Court of North Dakota.

June 8, 1998.

M.K. Heidi Heitkamp, Attorney General, Bismarck; Douglas A. Bahr, Assistant Attorney General, Bismarck, (on brief); and J. Philip Johnson, of Wold Johnson, P.C., Fargo, for petitioners.

J. Michael Schwartz, of Plunkett, Schwartz & Peterson, Minneapolis, MN, for respondents.

VANDE WALLE, Chief Justice.

[¶1] The State of North Dakota, Heidi Heitkamp, Attorney General for the State of North Dakota, Bismarck State College, Department of Human Services, Department of Transportation, Job Service North Dakota, North Dakota State University, North Dakota State University–Bottineau, University of North Dakota, and University of North Dakota–Lake Region (hereinafter collectively referred to as the Attorney General) have petitioned this court for a supervisory writ directing the district court to vacate its September 29, 1997, order requiring them to cease and desist from using special assistant attorneys general retained under contingent fee agreements to prosecute the underlying action.

[¶2] Jon M. Arnston, Arntson & Stewart, P.C.; Steven C. Lian, Farhart, Lian & Maxson, P.C.; Daniel A. Speights, Amanda Graham Steinmeyer, Robert N. Hill, and Speights & Runyon (Special Assistants Attorney General and law firms retained under contingent fee agreements to prosecute the underlying action, hereinafter collectively referred to as the Special Assistants) filed a supplemental petition for a supervisory writ directing the district court to vacate its September 29, 1997, order.

[¶3] We conclude this is an appropriate case in which to exercise our supervisory jurisdiction, and we grant the petitions.

I

[¶4] By complaint of July 11, 1994, W.R. Grace & Co.—Conn., (Grace) sued for a declaratory judgment determining its rights and duties associated with construction products containing asbestos designed, manufactured or sold by Grace and installed in public buildings owned or operated by the State. The State answered and counterclaimed on August 11, 1994. The State was represented by the Special Assistants under contingency fee agreements.

[¶5] On July 22, 1997, Grace requested a cease and desist order declaring the contingency fee agreements violate the North Dakota Constitution and North Dakota statutes, and prohibiting the Special Assistants from further prosecuting the underlying action pursuant to the contingency fee agreements. On September 29, 1997, the district court issued an order granting Grace's motion for a cease and desist order. The trial court later denied a motion to alter or amend the cease and desist order and denied a request for certification under Rule 54(b), N.D.R.Civ.P., permitting entry of a final judgment as to one or more but fewer than all of the claims or parties. The Attorney General and the Special Assistants then filed these petitions for a supervisory writ.

[¶6] This court's authority to issue supervisory writs is derived from Art. VI, § 2, N.D. Const., which vests this court with appellate and original jurisdiction "with authority to issue, hear, and determine such original and remedial writs as may be necessary to properly exercise its jurisdiction." *Traynor v. Leclerc*, 1997 ND 47, ¶6, 561 N.W.2d 644. *See also* N.D.C.C. 27-02-04 ("In the exercise of its appellate jurisdiction, and in its superintending control over inferior courts," this court "may issue such original and remedial writs as are necessary to the proper exercise of such jurisdiction."). The power to issue a supervisory writ is a discretionary power, which we exercise "rarely and cautiously," *Comm'n on Medical Competency v. Racek*, 527 N.W.2d 262, 264 (N.D.1995), "only to rectify errors and prevent injustice in extraordinary cases where no adequate alternative remedy exists." *Trinity Med. Ctr., Inc. v. Holum*, 544 N.W.2d 148, 151 (N.D.1996).

[¶7] To be appealable, an interlocutory order must satisfy one of the criteria specified in N.D.C.C. 28-27-02 and the trial court must certify the appeal under Rule 54(b), N.D.R.Civ.P. *Mitchell v. Sanborn*, 536 N.W.2d 678, 681 (N.D.1995). However, if denying immediate appellate review of an interlocutory order creates a substantial injustice, our supervisory jurisdiction acts as a safety net for the restrictive use of Rule 54(b). *Id.* at 682. Here, the case is extraordinary, the injustice if the trial court erred is significant and the Attorney General has no adequate alternative remedy. We conclude this is an appropriate case in which to exercise our supervisory jurisdiction.

## II

[¶ 8] Relying on *Bies v. Obregon,* 1997 ND 18, 558 N.W.2d 855, the Attorney General contends Grace's challenge of the contingent fee agreements is not ripe for adjudication because there can only be a controversy if there is a recovery in the underlying litigation. For a court to adjudicate, there must be before it an actual controversy that is ripe for review. *Id.* at ¶ 9. "An issue is not ripe for review if it depends on future contingencies which, although they might occur, necessarily may not, thus making addressing the question premature." *Id.* at ¶ 9. But, whether Grace has a right not to have litigation prosecuted against it by special assistant attorneys general retained under continent fee agreements on behalf of the State is an actual controversy which is ripe for review without waiting to see if the litigation results in a recovery.

[¶ 9] Alternatively, relying on *Diocese of Bismarck Trust v. Ramada, Inc.,* 553 N.W.2d 760 (N.D.1996), the Attorney General contends Grace's challenge is barred by laches. We discussed laches in *Diocese of Bismarck Trust:*

> "Laches does not arise from the passage of time alone, but is a delay in enforcing one's right which is prejudicial to another. In addition to the passage of time, parties against whom a claim of laches is sought to be invoked must be actually or presumptively aware of their rights and must fail to assert those rights against parties who in good faith changed their position and cannot be restored to their former state."

*Id.* at 767 (citations omitted). We are not persuaded the Attorney General was prejudiced by the timing of Grace's challenge.

[¶ 10] The Special Assistants contend Grace lacks standing to challenge the legality of the contingent fee agreements. We explained standing in *State v. Carpenter,* 301 N.W.2d 106 (N.D.1980):

> "The question of standing focuses upon whether the litigant is entitled to have the court decide the merits of the dispute. It is founded in concern about the proper—and properly limited—role of the courts in a democratic society. Without the limita-

tion of the standing requirements, the courts would be called upon to decide purely abstract questions. As an aspect of justiciability, the standing requirement focuses upon whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to justify exercise of the court's remedial powers on his behalf."

*Id.* at 107 (citations omitted), *quoted in Shark v. U.S. West Communications, Inc.,* 545 N.W.2d 194, 198 (N.D.1996). In *State v. Erickson,* 72 N.D. 417, 7 N.W.2d 865 (N.D. 1943), the Insurance Commissioner was sued by the State of North Dakota in a complaint signed by a private attorney who had no authority from the attorney general. The defendant challenged the authority of the attorney to represent the State. The trial court, agreeing with the defendant, dismissed the complaint and this court affirmed, holding the statute involved did not authorize an attorney other than the attorney general to represent the State in actions. Under *Carpenter* and *Erickson,* we conclude Grace had standing to challenge the authority of the Special Assistants to prosecute litigation against it.

## III

[¶ 11] The basis for the trial court's order is Grace's contention the contingent fee agreements violate Art. X, § 12, N.D. Const., and statutes requiring all State moneys to be paid into the treasury and disbursed only pursuant to legislative appropriation.

[¶ 12] Art. X, § 12(1), N.D. Const., provides, in part:

> "All public moneys, from whatever source derived, shall be paid over monthly ... to the state treasurer, and deposited by him to the credit of the state, and shall be paid out and disbursed only pursuant to appropriation first made by the legislature."

[¶ 13] "When interpreting constitutional sections, we apply general principles of statutory construction." *Comm'n on Med. Competency v. Racek,* 527 N.W.2d 262, 266 (N.D.1995). "Our overriding objective is to give effect to the intent and purpose of the people adopting the constitutional statement." *Id.* "The intent and purpose of a constitutional provision is to be determined,

if possible, from the language itself." *Bulman v. Hulstrand Constr. Co., Inc.,* 521 N.W.2d 632, 636 (N.D.1994).

[¶ 14] Grace argues "[w]hatever is paid by way of either settlement or judgment, constitutes public money for the public's claims, all of which must be deposited into the state treasury to be appropriated by the Legislature." Grace's position is supported by *Meredith v. Ieyoub,* 700 So.2d 478 (La.1997), where the Louisiana Supreme Court held that state's attorney general could not hire private attorneys to prosecute environmental litigation on a contingency basis:

"Thus, under the separation of powers doctrine, unless the Attorney General has been expressly granted the power in the constitution to pay outside counsel contingency fees from state funds, or the Legislature has enacted such a statute, then he has no such power....

"The Attorney General and Intervenors argue that the Attorney General's powers to institute civil proceedings and to appoint assistant attorneys includes the inherent authority to hire outside attorneys on a contingency fee basis to prosecute these claims. We disagree. Paying outside attorneys to prosecute legal claims on behalf of the state is a financial matter. As our prior jurisprudence indicates, the power over finances must be expressly granted by the constitution to another branch of government or else that power remains with the Legislature. We find nothing in Article IV, § 8, nor any other constitutional provision, which expressly grants the attorney general the power to hire and pay outside legal counsel on a contingency fee basis. The power to institute suit on behalf of the state, while extremely broad, does not expressly give him this power. Nor does the power to appoint assistant attorneys to serve at his pleasure."

*Id.* at 481–2.

[¶ 15] The Attorney General argues in this case:

"Contingent fees owed to special assistant attorneys general are not 'public moneys' and are not 'receiv[ed]' by public officials and, accordingly, are not paid over to the state treasurer....

"Under a traditional contingent fee arrangement, only the net proceeds of the recovery remaining after payment of the attorneys' fees are paid to the client—in this case the client State Agencies.... Therefore, only those net proceeds would be deposited in the state treasury and subject to the appropriations process. *See* N.D. Const. art. X, § 12."

This view is supported by *Button's Estate v. Anderson,* 112 Vt. 531, 28 A.2d 404 (1942), where the Vermont Supreme Court held that state's governor could contract with private attorneys to prosecute a claim against the United States on a contingency fee basis:

"Even though the petitioners have a lien on the fund [for a contingency fee], is payment barred to them because of the provisions of our Constitution and statutes? We hold not. Section 27 of chapter II of the Constitution provides that 'no money shall be drawn out of the Treasury, unless first appropriated by act of legislation'. The purpose of this provision is 'to secure regularity, punctuality and fidelity in the disbursements of the public money.' *City of Montpelier v. Gates,* 106 Vt. 116, 120, 170 A. 473, 474, quoting from Story, Const., sec. 1342. This provision means that no money shall be drawn from the treasury except in pursuance of law.... It is apparent that if [ ] a literal construction were given absurd results might follow. If it should appear that through some mistake the sum of, to illustrate, ten dollars belonging to a certain person had found its way into the state treasury, then under a literal construction of the Constitution it could not be paid out without a special appropriation although all parties agreed that the State had no right to it, legally and equitably. The amount does not alter the principle involved. Surely the framers of the Constitution could not have intended any such consequences. The clear construction to be given to this provision is that they intended to have it apply only to such funds, the equitable as well as the legal rights to which are in the State and that this intent was recognized at the time of its adoption.... Although the legal title to the whole fund no doubt is

in the State, the petitioners have equitable rights to that portion of the same which represents their fee.... Here the money is to be drawn from the treasury in pursuance of law and this satisfies the requirements of the Constitution."

*Id.* at 409–10.

■■■ [¶ 16] An ambiguity exists when good arguments can be made for two contrary positions about the meaning of a term in a document. *Sellie v. North Dakota Ins. Guar. Ass'n,* 494 N.W.2d 151, 156 (N.D.1992). Because Grace and the Attorney General have posited reasonable, but contrary, arguments about the meaning of Art. X, § 12, N.D. Const., the provision is ambiguous.

### IV

■■■ [¶ 17] "If the intentions of the people cannot be determined from the language itself, we may turn to other aids in construing the provision." *Johnson v. Wells County Water Resource Bd.,* 410 N.W.2d 525, 528 (N.D.1987). We may look at "the background context of what it displaced." *Id.* In construing a constitutional amendment, "we look first to the historical context of that amendment." *State v. City of Sherwood,* 489 N.W.2d 584, 587 (N.D.1992). "A contemporaneous and longstanding legislative construction of a constitutional provision is entitled to significant weight when we interpret the provision." *Id.* A constitution "must be construed in the light of contemporaneous history—of conditions existing at and prior to its adoption. By no other mode of construction can the intent of its framers be determined and their purpose given force and effect." *Ex parte Corliss,* 16 N.D. 470, 481, 114 N.W. 962, 967 (1907). To determine the intent of the people adopting what is now Art. X, § 12, N.D. Const., we look at constitutional provisions, statutes, and decisions about spending, the Attorney General, and attorney fee agreements providing the historical context existing when it was adopted in 1938.

[¶ 18] Prior to the adoption of the present Art. X, § 12, N.D. Const., in 1938, Art. XII, § 186, N.D. Const., had provided:

"No money shall be paid out of the state treasury except upon appropriation by law and on warrant drawn by the proper officer, and no bills, claims, accounts or demands against the state or any county or other political subdivision, shall be audited, allowed or paid until a full itemized statement in writing shall be filed with the officer or officers, whose duty it may be to audit the same."

Previously however, this court had indicated that not every expenditure of public money requires a legislative appropriation. In *State ex rel. Byrne v. Baker,* 65 N.D. 190, 192, 262 N.W. 183, 184 (1934), the court held "expenditures necessary to carry the constitutional mandate into effect are authorized by law even though no specific legislative appropriation has been made for the purpose." *See also State ex rel. Walker v. Link,* 232 N.W.2d 823, 826 (N.D.1975) ("Neither the Legislature nor the people can, without a constitutional amendment, refuse to fund a constitutionally mandated function.").

■■■ [¶ 19] In provisions originally contained in §§ 82 and 83 of the North Dakota Constitution adopted in 1889, and now renumbered, Art. V, § 2, N.D. Const., provides "[t]he qualified electors of the state ... shall choose a[n] ... attorney general," whose "powers and duties ... must be prescribed by law." Thus, the office of attorney general is "imbedded in the constitution," *State ex rel. Fausett v. Harris,* 1 N.D. 190, 194, 45 N.W. 1101, 1102 (1890). "The Attorney General is a constitutional officer. He is the law officer of the state and the head of its legal department." *State v. Heiser,* 20 ND 357, 366, 127 N.W. 72, 76 (1910) (reported as *State v. Heidt* in 20 N.D. 357, 127 N.W. 72).

[¶ 20] Many of the Attorney General's statutory powers and duties specified in N.D.C.C. ch. 54–12 were enacted in the early days of statehood. "The framers of the Constitution of North Dakota were aware of the common law powers of the attorney general." Russell J. Myhre, *The Attorney General for the State and the Attorney General for the People: The Powers and Duties of the Attorney General of North Dakota,* 52 N.D.L.Rev. 349, 357 (1975). As this court recognized in *State ex rel. Johnson v. Baker,* 74 N.D. 244, 258, 21 N.W.2d 355, 363 (1945), "many of the

members of the first legislative assembly were men who had participated actively in the framing of the constitution and must have prescribed the duties of the attorney general in the light of their understanding of its provisions."

[¶ 21] Among the relevant statutes in effect in 1938 were C.L.1913, § 157(2) (1925 Supp.) (now N.D.C.C. § 54–12–01(2)) ("The duties of the attorney-general shall be: . . . 2. To institute and prosecute all actions and proceedings in favor of or for the use of the state, which may be necessary in the execution of the duties of any state officer."); C.L.1913, § 157(11) (1925 Supp.) (now N.D.C.C. § 54–12–01(13)) ("The duties of the attorney-general shall be: . . . 11. To pay into the state treasury all moneys received by him for the use of the state."); C.L.1913, § 3376(9) (now N.D.C.C. § 54–12–02) ("The attorney-general or his assistants are authorized to institute and prosecute any cases in which the state is a party whenever in their judgment it would be to the best interests of the state so to do."); C.L.1913, § 160 (1925 Supp.) (now N.D.C.C. § 54–12–06) (Authorizing the attorney general to appoint three assistant attorneys general, and also authorizing the appointment of special assistant attorneys general, with or without compensation); and C.L.1913, § 161 (1925 Supp.) (now N.D.C.C. § 54–12–07) ("The annual salary of the Assistant Attorneys General shall be as provided by law and payable monthly on the warrant of the State Auditor.").[1] Thus, among the core duties imposed upon the Attorney General was that of instituting and prosecuting litigation on behalf of the state, and to assist with that duty the Attorney General was given the power to appoint salaried assistant attorneys general and to appoint special assistant attorneys general with or without compensation.

[¶ 22] The statutes relating to the Attorney General's duties and powers did not then and do not now specify in detail the methods by which the Attorney General is to perform and exercise her duties and powers. By providing in the North Dakota Constitution for the election of certain officers, "the framers of the Constitution . . . reserved unto themselves the right to have the inherent functions theretofore pertaining to said offices discharged only by persons elected as therein provided." *Ex parte Corliss*, 16 N.D. 470, 475, 114 N.W. 962, 964 (1907). In holding a statute did not allow a private attorney to represent the state in actions without authority from the Attorney General, this court referred to that language in *Ex parte Corliss* and explained: "The clear implication of this language is that the legislature has no constitutional power to abridge the inherent powers of the attorney general despite the fact that the constitution provides that the 'duties

---

1. The appointment of special assistant attorneys general is now governed by N.D.C.C. § 54–12–08, which provides, in part:

"After consultation with the head of the state department or institution or with the state board, commission, committee, or agency affected, the attorney general may appoint assistant or special assistant attorneys general to represent the state board, commission, committee, or agency. . . . The workers compensation bureau, the department of transportation, the state tax commissioner, the public service commission, the commissioner of insurance, the board of higher education, and the securities commissioner may employ attorneys to represent them. These entities shall pay the salaries and expenses of the attorneys they employ within the limits of legislative appropriations. The attorneys that represent these entities must be special assistant attorneys general appointed by the attorney general pursuant to this section. . . . The powers conferred upon special assistant attorneys general are the same as are exercised by the regular assistant attorneys general, unless the powers are limited specifically by the terms of the appointment. . . . The appointment may be made with or without compensation, and when compensation is allowed by the attorney general for services performed, the compensation must be paid out of the funds appropriated therefor. The attorney general may require payment for legal services rendered by any assistant or special assistant attorney general to any state official, board, department, agency, or commission and those entities shall make the required payment to the attorney general. Moneys received by the attorney general in payment for legal services rendered must be deposited into the attorney general's operating fund. . . ."

We construe the provision in § 54–12–08, that compensation for special assistant attorneys general must be paid "within the limits of legislative appropriations" and "out of the funds appropriated therefor" to mean that funds appropriated for another purpose cannot be used to pay the salaries.

of the \* \* \* attorney general \* \* \* shall be as prescribed by law.' (Const.Sec.83)." *State v. Erickson,* 72 N.D. 417, 422, 7 N.W.2d 865, 867 (1943). The Legislature may not strip officers " 'imbedded in the Constitution' ... of a portion of their inherent functions." *Ex parte Corliss,* 16 N.D. 470, 476–7, 114 N.W. 962, 965 (1907) (quoting *State ex rel. Fausett v. Harris,* 1 N.D. 190, 194, 45 N.W. 1101, 1102 (1890)).

■ [¶ 23] Furthermore, in addition to their statutory powers, this court long ago held that officers have implied powers as well. "The power of officers, implied and incidental, is ... 'that, in addition to the powers expressly given by statute to an officer or board of officers, he or it has, by implication, such additional powers as are necessary for the due and efficient exercise of the powers expressly granted, or as may be fairly implied from the statute granting the express powers.' " *State ex rel. Miller v. District Ct.,* 19 N.D. 819, 834, 124 N.W. 417, 423 (1910) (citation omitted).

[¶ 24] Against the foregoing historical backdrop, the people adopted what is now Art. X, § 12(a), N.D. Const., by initiated petition in 1938. In the North Dakota Publicity Pamphlet published by the Secretary of State in connection with the primary election on June 28th, 1938, the North Dakota Taxpayers Association, which sponsored the initiated petition amending § 186, provided the following explanation for the amendment, in part:

> "Requires all public taxes, fees and licenses be paid into state treasury and only be disbursed upon legislative appropriation. Requires all departments of government to be budgeted and have budget approved by legislative assembly. Special exceptions are made to prevent hardship to claimants against the state."

■ [¶ 25] "As a general rule the attorney general has control of litigation involving the state and the procedure by which it is conducted." *Bonniwell v. Flanders,* 62 N.W.2d 25, 29 (1953). We are unable to discern from the text or history of Art. X, § 12(1), N.D. Const., or more recent amendments of the relevant statutory provisions, an intention to limit the Attorney General's authority to control litigation prosecuted on behalf of the State and to control the appointment and method of compensation of special assistant attorneys general.

[¶ 26] Not every aspect of the powers of a constitutional officer like the Attorney General may be conveniently spelled out by statute, and the Legislature has not attempted to do so. Public officers have implied and incidental powers in addition to their explicit statutory powers. *State ex rel. Miller v. District Ct.,* 19 N.D. at 834, 124 N.W. at 423. *See also Brink v. Curless,* 209 N.W.2d 758, 767 (N.D.1973), *overruled on other grounds by City of Bismarck v. Muhlhauser,* 234 N.W.2d 1 (N.D.1975) ("[W]here the powers and duties of an officer are prescribed by the Constitution and statutes, such powers and duties are measured by the terms and necessary implication of such grants and must be exercised in accordance therewith.") As we recently said in *Kasprowicz v. Finck,* 1998 ND 4, ¶ 14, 574 N.W.2d 564, "leaving the manner and means of exercising an administrative agency's powers to the discretion of the agency implies a range of reasonableness within which the agency's exercise of discretion will not be interfered with by the judiciary."

[¶ 27] Absent express constitutional or statutory limitations, we see no reason for this court to accord a constitutional officer like the Attorney General a narrower measure of discretion than the range of reasonableness accorded to other public officials, such as school boards (*Reed v. Hillsboro Pub. Sch. Dist. No. 9,* 477 N.W.2d 237 (N.D. 1991)), or other municipal authorities (*Haugland v. City of Bismarck,* 429 N.W.2d 449 (N.D.1988)).

[¶ 28] We believe moneys awarded to the State of North Dakota as a result of legal action brought by the Attorney General on behalf of the State are public funds. But, contingent fee arrangements with attorneys have long been recognized in North Dakota. In *Greenleaf v. Minneapolis, St. P. & S.S. M. Ry. Co.,* 30 N.D. 112, 151 N.W. 879, 884 (1915) this court observed as to contingent fees: "Their validity is now, at least in America, everywhere recognized, and it is a matter

of common knowledge, or should be a matter of common knowledge to every lawyer and judge. . . ." In view of this long-standing acceptance of contingent fee arrangements and in view of the historical authority of the Attorney General, we believe she has the authority to employ special assistant attorneys general on a contingent fee agreement unless such agreements are specifically prohibited by statute.

[¶ 29] Our conclusion does not leave the authority of the Attorney General to establish a contingent fee totally unfettered. "Courts have inherent authority to supervise the changing of fees for legal services under their power to regulate the practice of law." 7 Am.Jur.2d *Attorneys at Law* § 254 (1997). This is not a recent development. With regard to fees, this court long ago held an attorney "to conscionable dealing as an officer of this court." *Simon v. Chicago, M. & St. P. Ry. Co.*, 45 N.D. 251, 256, 177 N.W. 107, 108 (1920). As the Special Assistants recognized in their brief and oral argument, attorney fees are now subject to oversight by this court under the North Dakota Rules of Professional Conduct. Under Rule 1.5(a), N.D.R.P.C., an attorney's fee must be reasonable. Rule 1.5(c), N.D.R.P.C., provides: "A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (d) or other law." "In general, the Rules of Professional Conduct apply to a lawyer representing a governmental entity in the same manner as they apply to a lawyer for a private client." Comment, Rule 1.18, N.D.R.P.C.

### V

[¶ 30] For the reasons stated above, we conclude the district court erred in ruling the contingency fee agreements are unlawful. We grant the petitions for a supervisory writ, and we direct the district court to vacate the order declaring the contingency fee agreements violate the North Dakota Constitution and statutes and prohibiting the Special Assistants from further prosecuting the underlying action pursuant to the contingency fee agreements.

[¶ 31] MESCHKE, MARING and NEUMANN, JJ., and DAVID W. NELSON, District Judge, concur.

[¶ 32] DAVID W. NELSON, District Judge, sitting in place of SANDSTROM, J., disqualified.

