1999 SD 124

**CITIBANK (SOUTH DAKOTA), N.A., Plaintiff and Appellee,**

v.

**STATE of South Dakota, Defendant and Appellant,**

v.

**Richard A. Butler, Treasurer of the State of South Dakota, Intervenor.**

**No. 20618.**

Supreme Court of South Dakota.

Argued June 2, 1999.

Decided Sept. 8, 1999.

Mark Barnett, Attorney General, Lawrence E. Long, Chief Deputy Attorney General, Constance K. Nilles, Assistant Attorney General, Pierre, South Dakota, Attorneys for defendant and appellant.

Linda Lea M. Viken of Viken, Viken, Pechota, Leach & Dewell, Rapid City, South Dakota, Attorney for intervenor.

MILLER, Chief Justice.

[¶ 1.] State appealed from the trial court's declaratory judgment ruling that Citibank was not required to pay six unmatched payments to State under South Dakota's Uniform Unclaimed Property Act. Prior to oral argument on the appeal, State and Citibank agreed to settle the litigation and State moved to dismiss the appeal. State Treasurer Richard Butler then moved to intervene and we granted the motion. We now grant State's motion to dismiss.

### FACTS

[¶ 2.] Citibank, N.A., a national banking association, is the United States' largest issuer of Visa and Mastercard credit cards. When Citibank issues a credit card to a customer, it establishes a loan account for the customer, so that the customer's indebtedness can be tracked. A post office box, designated specifically to receive payments, is also assigned to that customer. When Citibank receives a payment, it matches the customer's Citibank account to the payment, and the account is credited for the payment amount. However, at times, Citibank receives negotiable instruments that cannot, for various reasons, be credited to any Citibank account.

[¶ 3.] In 1991, Citibank and State entered into an Agreement of Resolution regarding these "unmatched payments."[1] State claimed that the payments were unclaimed property which were reportable under the Unclaimed Property Act.[2] Citi-

David L. Knudson and Monte R. Walz of Davenport, Evans, Hurwitz & Smith, Sioux Falls, South Dakota, Attorneys for plaintiff and appellee.

1. "Unmatched payments" is the term the parties agreed to use to describe the negotiable instruments that Citibank receives that cannot be matched to an individual Citibank credit card account.

2. The agreement allowed Citibank to maintain its position that reporting the unmatched payments was not required.

bank maintained that the payments were not subject to the Act; however, it agreed to submit a report covering the period from 1981 through 1985 and also to submit $369,748.68 for the unmatched payments. Moreover, since the 1991 agreement, Citibank has reported annually to the State the amount of the unmatched payments and has remitted the payment amount to the State.

[¶ 4.] On January 11, 1996, Citibank brought a declaratory judgment action seeking a declaration that six unmatched payments received by Citibank during the 1991–92 period [3] were not subject to South Dakota's Uniform Unclaimed Property Act. *See* SDCL ch 43–41B. The parties filed a joint stipulation of facts, which was submitted to the trial court. Citibank and State filed cross motions for summary judgment. The trial court granted declaratory judgment in Citibank's favor and State appealed.

[¶ 5.] Prior to oral argument of the appeal, which was set for the February term of this Court, State moved for a change of date of oral argument. This Court granted the motion, changing the date and time of the oral argument to the May term.

[¶ 6.] Before the May term of Court commenced, State moved to dismiss the appeal, stating that it and Citibank had agreed to settle the litigation. State Treasurer Butler then moved to intervene or in the alternative to file amicus curiae. This Court ordered Citibank, State, and Butler to file simultaneous briefs and reply briefs and present oral argument on the motion to dismiss and the motion to intervene

during the May term of Court.[4] Following the briefing and oral argument, this Court, in its discretion, granted Butler's motion to intervene.[5] We also ordered all parties to file additional briefs addressing the motion to dismiss, which is the issue presently before us.

## DECISION

[¶ 7.] **Whether State's motion to dismiss should be granted.**

■ [¶ 8.] After reaching a settlement agreement with Citibank, and prior to the presentation of oral arguments on the merits, State moved to dismiss its appeal of the trial court's decision. We find that State has the right to move for such a dismissal and Butler cannot interfere with that right. *See Safeway Ins. Co. v. American Arbitration Ass'n*, 247 Ill.App.3d 355, 187 Ill.Dec. 104, 617 N.E.2d 312, 315 (1stDist. 1993) ("An appellant has the right to voluntarily dismiss or withdraw an appeal before a decision on the merits . . . "). *See generally* 5 AmJur2d *Appellate Review* § 874 (1995) (dismissal upon appellant's motion). However, the appeal cannot be dismissed without this Court's consent. *See In re* Estate of Tucci, 104 N.C.App. 142, 408 S.E.2d 859, 864 (N.C.App.1991) (stating that an appeal cannot be withdrawn without the appellate court's consent).

[¶ 9.] Butler advances numerous claims as to why we should deny State's motion to dismiss the appeal. He asserts that returning the funds to Citibank requires one of two options: (1) an appropriation by the Legislature of the $4.1 million; or (2) his

---

**3.** The six unmatched payments included an American Express traveler's check, a cashier's check, two personal checks, an Army finance check, and an American Express money order. All the instruments, except the Army Finance check, were signed. Three of the instruments were made payable to Citibank, one was made payable to Citibank Advantage, one to Mastercard, and one to Citibank Visa. None of the instruments included information identifying the customer account number.

**4.** Oral arguments that were originally scheduled for the May term of Court commenced on June 2, 1999.

**5.** In this Court's June 3, 1999 order, we granted Butler's motion to intervene. Such order clearly states that the intervention was granted in the Court's discretion. However, the order should have, but failed to, include the permissive intervention citation (SDCL 15–6–24(b)).

authorization of a refund. However, we find that neither is required. The parties admit in their briefs that the funds at issue here are not State funds. In fact, Butler states that the funds "are not really general fund revenues in the traditional sense. They are subject, without appropriation, to prior claim by the Treasurer to pay the rightful owner(s) of the funds when they are found."

[¶ 10.] He also specifically argues that, as a full party to the action whose consent is necessary for dismissal, he has the right to stop the appeal from being dismissed. Again, we disagree.

[¶ 11.] The trial court held that Butler is not an indispensable party to this litigation.[6] We agree with the court's determination. However, by granting Butler's motion to intervene, we allowed his "voice ... to be heard" by this Court. *Federal Deposit Ins. Corp. v. United States*, NoCV–96–98–ST, 1997 WL 214954, at *6 (D.Or. Jan. 3, 1997) (stating "[i]ntervention allows the third voice of the intervenor to be heard by the court and binds the intervenor to the judgment"). *See also Kirkland v. New York State Dep't of Correctional Services*, 711 F.2d 1117, 1128 (2dCir.1983) (stating that intervenor's interest entitled the intervenor to be heard, but was not such a strong interest to require consent to the agreement). However, allowing him to intervene in the action did not necessarily grant him the right, as he claims, to prevent dismissal of the action. An intervenor's presence in the action does not necessarily "clothe it with the status of an original party." *Harris v. Amoco Prod. Co.*, 768 F.2d 669, 675 (5thCir.1985). *See also Kirkland*, 711 F.2d at 1126 (citation omitted) (stating that, even if an intervenor is granted un-

conditional intervention, the intervenor's rights are "not necessarily equivalent to that of a party").

[¶ 12.] Moreover, "[a]bsent an independent claim, an intervenor cannot keep a lawsuit alive which the original parties wish to end."[7] *Federal Deposit*, 1997 WL 214954, at *6. *See also EEOC v. Nevada Resort Ass'n*, 792 F.2d 882, 886 (9thCir.1986) (citations omitted) ("A party seeking permissive intervention ... must establish a basis for ... jurisdiction independent of the court's jurisdiction over the underlying action."). Thus, for Butler to keep the suit alive, it is essential that he establish that he has an independent claim. *See Federal Deposit*, 1997 WL 214954, at *6. *See also Benavidez v. Eu*, 34 F.3d 825, 830 (9thCir.1994) (in order to permit an intervenor to continue, he must show both an independent basis for jurisdiction and that unnecessary delay would otherwise result). Upon reviewing the record and the arguments presented, we conclude that he has failed to meet this requirement—he has not established the existence of any independent claim.

[¶ 13.] Therefore, we find that Butler cannot prevent State and Citibank from properly settling the action. Accordingly, we grant State's motion to dismiss.

[¶ 14.] KONENKAMP and GILBERTSON, Justices, concur.

[¶ 15.] AMUNDSON, Justice, concurs specially.

[¶ 16.] SABERS, Justice, dissents.

AMUNDSON, Justice (concurring specially).

[¶ 17.] There has been a long-standing policy among the courts across this nation

---

**6.** The trial court determined that Butler *might* become indispensable if the funds become subject to escheat.

**7.** As a general rule, when the original parties to a suit reach a settlement, "[a] permissive intervenor may continue to litigate after the original parties have been dismissed only

when '(1) an independent basis for jurisdiction exists, and (2) unnecessary delay would otherwise result.'" *Federal Deposit*, 1997 WL 214954 at *6 (quoting *Benavidez v. Eu*, 34 F.3d 825, 830 (9thCir.1994)). We find that Butler cannot satisfy either prong.

to encourage and accept settlements in pending cases. Part of the rationale for such a policy is:

> In many cases, an attorney will be faced with strategic choices, any one of which may lead to a favorable result for his client. An attorney must make an educated guess as to which course of action is most likely to succeed. The practice of law is not an exact science[.]

*DePugh v. Sladoje,* 111 Ohio App.3d 675, 676 N.E.2d 1231, 1239 (1996).

[¶ 18.] In this case, an agreement has been made by the parties to settle the case while it was on appeal to this Court from a judgment favoring Citibank at the trial court level. It certainly is "not an exact science" in attempting to advise a client or predicting for a client what the result would be of any case on appeal, especially one of first impression.

[¶ 19.] As Kenny Rogers sang: "You've Got to Know When to Hold Them and Know When to Fold Them." After reviewing all the briefs filed in this case and the record, it is my personal opinion that this settlement is in the best interest of the State of South Dakota as argued by its attorneys. The time to fold in this case was when you could avert a reduction of over four million dollars in the general revenues of your client.

SABERS, Justice (dissenting).

[¶ 20.] The State Treasurer is an independent constitutional officer elected by the people of South Dakota. Article IV, § 7 provides:

> There shall be chosen by the qualified electors of the state at the general election of the Governor and every four years thereafter the following constitutional officers: attorney general, secretary of state, auditor, *treasurer,* and commissioner of school and public lands,

who shall severally hold their offices for a term of four years.

(emphasis added). SDCL 1–10–1 delineates the general duties of the State Treasurer and provides:

> The state treasurer shall have charge of and safely keep all public moneys which shall be paid into the state treasury, and pay out the same as directed by law, and perform such other duties as are required of him by law.

One of the duties that the State Treasurer is required to perform by state law is the administration of unclaimed property funds. SDCL 43–41B–1(1). Neither the Attorney General, as legal counsel, nor the Governor has the right to usurp or superimpose themselves upon the constitutional and statutory duties of the State Treasurer.[8]

[¶ 21.] The State Treasurer is South Dakota's spokesperson on unclaimed property funds and must be a party or signatory to any settlement with Citibank. Because the State Treasurer has not agreed to the settlement proposal, this case is not moot and the State Treasurer is entitled to a decision on the merits, if he insists. However, he better be careful what he wishes for –he might get an answer on the merits that he does not want.

[¶ 22.] Furthermore, Citibank requires as a condition of the proposed settlement a dismissal of the appeal. Article XII, § 1 of the South Dakota Constitution provides:

> No money shall be paid out of the treasury except upon appropriation by law and on warrant drawn by the proper officer.

Article XI, § 9 provides in part:

> No indebtedness shall be incurred or money expended by the state, and no warrant shall be drawn upon the state treasurer except in pursuance of an ap-

---

**8.** *See State v. Hagerty,* 580 N.W.2d 139, 146 (N.D.1998) (quoting *Ex parte Corliss,* 16 N.D. 470, 114 N.W. 962, 964 (N.D.1907)) (stating: "By providing in the North Dakota Constitution for the election of certain officers, 'the framers of the Constitution ... reserved unto themselves the right to have the inherent functions theretofore pertaining to said offices discharged only by persons elected as therein provided.' ").

propriation for the specific purpose first made.

Article XII, § 2 provides:

The general appropriation bill shall embrace nothing but appropriations for ordinary expenses of the executive, legislative and judicial departments of the state, the current expenses of state institutions, interest on the public debt, and for common schools. *All other appropriations shall be made by separate bills, each embracing but one object, and shall require a two-thirds vote of all the members of each branch of the Legislature.*

(emphasis added). The proposed settlement violates the South Dakota Constitution because it involves a $4.1 million appropriation, which requires a two-thirds majority vote of the South Dakota Legislature, and the settlement has not been presented to the Legislature for approval.

[¶ 23.] How can we dismiss the appeal when a dismissal would effectively approve an illegal settlement? We cannot. This proposed settlement will not be legal until approved by the South Dakota Legislature. We should remand this case to the circuit court to enable these parties an opportunity to obtain legislative approval.

[¶ 24.] During last year's State of the State message, Governor Janklow proclaimed that he was going to intervene in the process and attempt a settlement with Citibank. I commend him for his foresight, fortitude, and good faith desire to end this on-going dispute. However, the best laid plans often go astray. The Governor missed a step—he never got legislative approval. It is obvious this proposed settlement requires legislative approval and we should remand for that purpose.

[¶ 25.] In view of the constitutional and statutory duties of the State Treasurer, we must deny the motion to dismiss. However, because the State Treasurer's position has everything to lose and nothing to gain for South Dakota, we should deny the motion to dismiss and remand to the circuit court to allow the State Treasurer to consent to the proposed settlement or the legislature to approve the settlement and the required appropriation within six months.